**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Clifford HERSH, Defendant-Appellant.**

**No. 72–1268.**

United States Court of Appeals, Ninth Circuit.

July 7, 1972.

---

Michael H. Metzger (argued), of Hallinan, Rice, Metzger & Hallinan, San Francisco, Cal., for defendant-appellant.

John G. Milano, Asst. U. S. Atty. (argued), F. Steele Langford, Asst. U. S. Atty., James L. Browning, Jr., U. S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before BARNES and GOODWIN, Circuit Judges, and McGOVERN, District Judge.*

PER CURIAM:

Appellant Clifford Hersh was tried under a three-count indictment involving two counts of sale of dangerous drugs and one count of conspiracy to sell dangerous drugs. He was found guilty on the conspiracy count, and appeals from the judgment and sentence entered upon the verdict of guilt.

There are two main assignments of error on appeal. The first is that the trial court incorrectly denied appellant's Motion to Suppress certain evidence gathered as a result of a search conducted by law enforcement officials on March 6, 1969 at Yountville, Napa County, California. The second is that the appellant was denied a fair trial because of the prosecutor's repeated reference to one Brovko, who did not testify.

March 6, 1969, two deputy sheriffs of Napa County visited a house in Yountville after receiving information from a roof repairman, McGregor, that he was suspicious that a laboratory was being operated on premises where he had made some roof repairs. The deputies did not have a search warrant. They knocked on the front door, but no one was home. While standing on the front porch, they peered through a window which was only partially covered with a drape. They saw oxygen tanks, beakers, other paraphernalia, and some white powdery substance on the floor. They then checked next door with a neighbor, one Milhouse, who told them that he had been keeping a log of the movements of his neighbors. Milhouse said that he had seen the neighbors bringing chemicals into the house. The next day, March 7, 1969, following a telephone call from Milhouse, the deputies returned to the house and arrested appellant and others as they were leaving in a car. The deputies seized some chemicals (at that time legal) that were in the car, and a small quantity of phencyclidine. The arrest and seizure were without warrant.

Appellant first argues that when the deputies peered through the window of the house on March 6th, it was a search within the meaning of the Fourth Amendment (People v. Hurst, 325 F.2d 891 (9th Cir. 1963)) and that since it was without a warrant, the subsequent seizure of evidence and arrest were the improper fruit of that unconstitutional act, and therefore invalid. He argues that he reasonably relied upon his right to privacy by drawing his blinds, by

---

posting "No Trespassing" signs, and insists that the Fourth Amendment protects against searches outside the house as well as within.

■ The trial court, however, was satisfied that the observations through the window were not illegal, and we concur. This showing is based upon five facts established in the record:

(1) Signs reading "No Trespassing" were not posted on the premises.

(2) The property was not enclosed with a fence.

(3) The deputies went to the house only to talk with the person or persons living there.

(4) The officers approached the house openly in broad daylight, and

(5) The deputies merely looked through a window located immediately available to the left of the front door and did not have to move bushes or other objects out of the way to do so.

The Government relies on the following statement from Davis v. United States, 327 F.2d 301 (9th Cir. 1964), for authority that the actions of the deputies were proper:

"Absent express orders from the person in possession against any possible trespass, there is no rule of private or public conduct which makes it illegal per se, or a condemned invasion of the person's right of privacy, for anyone openly and peaceably, at high noon, to walk up the steps and knock on the front door of any man's 'castle' with the honest intent of asking questions of the occupant thereof—whether the questioner be a pollster, a salesman, or an officer of the law."

Summarized, it's the Government's position that the deputies were in a place where they had a right to be, and that whatever they saw through the window was in *plain sight,* i. e., it was there to be seen, and was not therefore an improper search.

Appellant unsuccessfully argues his version of the facts, i. e., that the deputies did not just walk up to the door, knock and peer in one window, but rather, that they walked around the house and peered into all the windows. He claims that the plain sight doctrine is not here applicable because the deputies did not have just the intention to interview the occupants of the house, but rather, that they at all times intended to search the premises. However, the Motion to Suppress was argued on four separate occasions, and two different trial judges properly decided the issue against the appellant.

■ Additionally, the arresting officers received sufficient evidence from sources independent of the claimed illegal search to give them probable cause to arrest the appellant on March 7, 1969. The exclusionary rule of Wong Sun v. United States, 371 U.S. 471, 487, 83 S. Ct. 407, 9 L.Ed.2d 441 (1963), is not applicable here because sufficient information to support the arrest and seizure came from untainted sources. The following facts support this contention.

(1) McGregor, a roofer, saw laboratory apparatus in the house.

(2) Milhouse, the neighbor, gave the deputies a list of chemicals he had seen carried into the house.

(3) Milhouse gave the deputies a record of the odd hour arrivals to and departures from the house.

(4) The officers checked and determined to their satisfaction that no license or permit had been issued for the operation of a laboratory on the premises.

(5) A man named Powell had rented the house ostensibly for use as a vacation spot in the country.

(6) The vehicle at the house was not owned by a man named Powell, but by a person named Hersh.

(7) The premises were being evacuated at an unusual time of the month.

(8) The deputies observed oxygen tanks and boxes being moved

from the house on March 7th, and saw smoke emanating from the chimney.

The Government argues that these sources and bits of information were independently sufficient to support the arrest on March 7th without regard to the March 6th "peering through the window" information. Citing Nardone v. United States, 308 U.S. 338, 341, 60 S. Ct. 266, 84 L.Ed. 307 (1939), the Government shows that the decision to make the arrest was so attenuated with those independent facts that they dissipated the claimed taint, of which we found there to be none, stemming from the observation through the window.

■ In his remaining assignment of error, the appellant contends that the Assistant United States Attorney, who tried the case for the Government, improperly bolstered the Government's case at the trial by repeated references to one Nicolai Brovko, a cooperating agent, who did not testify. Brovko's connection with the case is that he gave a small notebook belonging to the defendant's partner (Ascensio) to the Government. That notebook contained information concerning their drug sales and allegedly identified the person designated as "C" in the book as Cliff Hersh, this defendant. Appellant contends that the United States Attorney did this in his Opening Statement, in his examination of Agent Schickedanz, and in his Closing Argument. He lists seven such events said to give rise to reversible error:

(1) That during his Opening Statement, the Assistant United States Attorney requested the Clerk to call the name of Brovko because he said that he did not know what Brovko looked like. Appellant says that the sole purpose for the act was to bring to the attention of the jury that Brovko was a Government witness.

(2) That moments after stating that Brovko was subpoenaed as a Government witness, the Assistant United States Attorney openly stated that Brovko was an absent witness and that he was essential to the Government's case. The allegation is that this was done solely to apprise the jury that Brovko had material evidence.

(3) That during his Opening Statement the Assistant United States Attorney referred to some "testimony" of Brovko in connection with the notebook. Such statement is claimed to be error on the ground that the United States Attorney knew that he would not be able to present evidence of that testimony, and that it was mentioned only to bring in matters that would not be in evidence.

(4) That the Assistant United States Attorney said in his Opening Statement that Brovko told the Government agent "everything he knew about the operation of Ascensio, defendant Hersh and one Varga." The appellant argues that the sole purpose was to inform the jury that Brovko gave incriminating information about defendant Hersh.

(5) That after Ascensio identified Hersh as the person who was referred to as "C" in the notebook, the Assistant United States Attorney attempted to bolster that testimony by asking Agent Schickedanz whether Brovko identified the person "C" when he turned the notebook in. The objection to the question was overruled, and the witness answered "Yes". That is claimed error because the inference from the question and the answer was that "C" was the defendant Cliff Hersh.

(6) That the Assistant United States Attorney said at the end of his case that "with the exception of Mr. Brovko for whom an arrest warrant has been issue, by the Court, we have no further, wit-

nesses", and that Brovko was the only person who could testify about certain facts in the charged conspiracy. It is said that this constituted prejudicial evidence by inference.

(7) And finally, that the Assistant United States Attorney in his Closing Argument stated that Brovko knew the source of the illegal drugs and related that information to government agents, and that Ascensio did not testify contrary to what Brovko had told the agents. This is claimed error because it attempted to bolster the Ascensio testimony by evidence not on record.

Appellant argues that the Assistant United States Attorney knew or should have known that Brovko had not been served with a subpoena because the Marshal had served Brovko's father, and that defendant's trial counsel so informed the United States Attorney during the trial. Appellant therefore bases his contentions for reversal on the principles that a prosecutor may not premise arguments on evidence not in the case or argue that unused evidence would have supported the Government's case.

The Government adequately answers each such claimed statement of error:

(1) It shows that the Assistant United States Attorney requested that the name of Brovko be called after the defense had requested that all of the witnesses be removed from the court room. The United States Attorney avers that he did not know what Brovko looked like and that from the return of service by the Marshal, he thought that Brovko had been served.

(2) The Assistant United States Attorney called Brovko "this absent witness" only after his name had been called in the court room and out in the hall. The Government successfully argues that it was necessary to refer to Brovko as an "essential" witness in order to persuade the judge to issue a bench warrant.

(3) As to the Assistant United States Attorney's reference

(4) in his Opening Statement to the notebook and Brovko's testimony as to it, the Government adequately explains that at such point in time, it reasonably expected Brovko to testify. It is also pointed out that the defense mentioned the same fact in its Opening Statement.

(5) As to the testimony by Schickedanz that Brovko stated the name of the person referred to as "C" in the notebook, the Government points out that the questioning ended there. The witness was not asked, nor did he state, the name of the person who was so identified.

(6) As to the statement at the end of the case that with the exception of the absent Brovko, the Government had no more witnesses, it is pointed out that the statement was made in conjunction with the request that the Government be allowed to re-open its case if Brovko was brought into court in time, a proper and reasonable request.

(7) The Government shows that rather than vouching for the accuracy of the nonexistent testimony of Brovko in its Closing Argument, that the Assistant United States Attorney instead expressly advised the jury that "You have no evidence before you as to anything that Mr. Brovko said."

■   And finally, it is pointed out that both counsel in Closing Argument, and the court by instruction, told the jury that statements by counsel were not evidence. It must be assumed that the jury followed the Court's instruction.

Affirmed.