UNITED STATES of America, Appellee,

v.

Heriberto PACHECO–RUIZ, Appellant.

No. 74–3337.

United States Court of Appeals,
Ninth Circuit.

Dec. 23, 1976.

---

Victor R. Schwanbeck and Hiram A. Cannon (argued), of Cannon & Schwanbeck, Tucson, Ariz., for appellant.

Bruce Heurlin, Asst. U. S. Atty. (argued), Tucson, Ariz., for appellee.

Before CARTER, HUFSTEDLER, and GOODWIN, Circuit Judges.

After considering appellee's petition for rehearing with suggestion for rehearing en banc (filed December 10, 1975) and appellant's objection thereto (filed February 17, 1976), Judges Hufstedler and Goodwin voted to deny the petition for rehearing and to reject the suggestion for rehearing en banc; Judge Carter voted to allow the petition for rehearing and recommended that the case be heard en banc.

The full court was advised of the suggestion for rehearing en banc. An active judge of the court requested en banc consideration, and a majority of the active judges of the court voted to take the case en banc unless the panel modified its opinion. The panel modified its opinion and circulated it to the entire court; thereafter, upon a vote of the active judges, the request for en banc failed of a majority.

 The opinion filed October 23, 1975, is withdrawn. The attached amended opinion is filed herewith, together with Judge Carter's dissenting opinion.* The petition for rehearing is denied, and the suggestion for en banc rehearing is rejected. Judges Chambers' and Trask's opinions dissenting to the rejection are filed herewith.

CHAMBERS, Circuit Judge, dissenting:

I dissent from the withdrawal of this case from consideration by the court en banc. A review of the transcript of evidence and photographs of the crawl space still leaves me with the firm conviction that the fourth amendment was not intended to protect the crawl space here. Although *Pendleton* admittedly is controlling in cases involving the breaking and entering of a house or garage extending the privacy of the home to crawl space under a house is simply expanding the fourth amendment too far. In my view, exaggerated applications of the amendment discredit its basic validity.

CHOY, Circuit Judge, joins in this dissenting opinion.

TRASK, Circuit Judge, dissenting:

I dissent from the refusal of the court to take this case en banc for the reasons stated by Judge Carter in his dissenting opinion.

## APPENDIX

### Opinion of October 23, 1975

### As modified December 23, 1976.

Before CARTER, HUFSTEDLER, and GOODWIN, Circuit Judges.

GOODWIN, Circuit Judge:

Border patrol agents looking for illegal aliens under Pacheco-Ruiz's house in Nogales found suspicious-looking burlap bags, and called a narcotics agent. The resulting discovery of marijuana led to a conviction under 21 U.S.C. § 841(a)(1) and this appeal.

The border patrol agents had a statutory right to be on Pacheco-Ruiz's land. 8 U.S.C. § 1357(a)(3). But the statute which gives immigration officers a qualified right to enter upon private land within 25 miles of the border to search for aliens specifically excludes "dwellings".[1]

---

* See Appendix.

1. 8 U.S.C. § 1357(a)(3):

"(a) Any officer or employee of the Service authorized under regulations prescribed by the Attorney General, shall have power without warrant—
"* * *.

"(3) within a reasonable distance from any external boundary of the United States, to board and search for aliens any vessel within the territorial waters of the United States and any railway car, aircraft, conveyance, or vehicle, and within a distance of twenty-five miles from any such external boundary to have access to private lands, but not dwell-

The partially excavated space under the house, which could be described either as a crawlspace or as an unfinished basement, was enclosed. There was a small door, about 2–3 feet wide and perhaps 3 feet high, at each end. One of the agents testified that he looked through a crack at the top of the door, saw empty burlap bags, and, with the aid of a flashlight, saw filled burlap bags at the far end of the space. We view this crawlspace as a part of the dwelling, and thus a warrant, or some reason for a search without a warrant, was necessary.

Agent Carnes, an experienced border patrol officer, had previously tracked aliens from the border to a point twenty feet from Pacheco-Ruiz's house. This time he had followed five sets of human footprints from the border to the house during the early morning of the day of the search. We will assume, therefore, that Agent Carnes had probable cause to believe that illegal aliens were being concealed in or about the house. This probable cause would have supported an application to a magistrate for a search warrant.

Having failed to obtain a warrant, the government argues that there were exigent circumstances making a warrant impracticable. See Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). However, the government failed to prove exigent circumstances. The officers came upon private property during business hours. A magistrate was presumably within reasonable distance. There were enough officers present to make certain that until a warrant was issued no one could leave the premises without being checked for citizenship. Compare United States v. Scott, 520 F.2d 697 (9th Cir. 1975), cert. denied, 423 U.S. 1056, 96 S.Ct. 788, 46 L.Ed.2d 645 (1976). The exigent-circumstances exception to the warrant requirement is not available on these facts. See United States v. Rosselli, 506 F.2d 627 (7th Cir. 1974); United States v. Marshall, 488 F.2d 1169, 1189–90 (9th Cir. 1974).

Another circuit has upheld a search in some respects similar to the one now under examination. See United States v. Wright, 146 U.S.App.D.C. 126, 449 F.2d 1355 (1971), cert. denied, 405 U.S. 947, 92 S.Ct. 986, 30 L.Ed.2d 817 (1972). There, an officer was investigating an auto theft. He backtracked from an abandoned, stripped automobile to a private garage where stripped auto parts might be found. He shined his flashlight through a crack in the garage door. He found what he was looking for. There was no warrant nor any exigent circumstances. The court affirmed upon two theories: plain view, and a "challenging situation". We believe that our own decision in Pendleton v. Nelson, 404 F.2d 1074, 1077 (9th Cir. 1968), precludes our following the majority view in the District of Columbia Circuit, even if we should be persuaded that the original discovery of the contraband in our case was the result of observing something in plain view.[2] We held in Pendleton that in the absence of a warrant, or exigent circumstances making

---

ings, for the purpose of patrolling the border to prevent the illegal entry of aliens into the United States * * *."

**2.** Without citing or distinguishing Pendleton v. Nelson, 404 F.2d 1074 (9th Cir. 1968), we upheld in United States v. Hersh, 464 F.2d 228 (9th Cir.), cert. denied, 409 U.S. 1008, 93 S.Ct. 442, 34 L.Ed.2d 301 (1972), a warrantless arrest which relied for probable cause in part on a plain-view sighting of contraband. In Hersh, the trial court had made a specific finding that the officers did not make the discovery by means of a search, but by seeing in plain sight drug-processing equipment while the officers were on the porch of the house to inquire of the occupants about possible illegal activity which had been reported by neighbors. The officers did not enter the house upon seeing the paraphernalia, but returned the next day, again without an arrest or search warrant, and made a probable cause arrest as the occupants were leaving their house by car. In Pendleton, officers looked through a garage window, saw marijuana on a table, and subsequently entered the structure and seized the contraband. The sighting was relied on not merely for probable cause, but for entry and seizure as well. The facts and issues of Hersh and Pendleton are sufficiently different that it is not necessary in the present case to resolve any possible conflict between the decisions.

the application for a warrant impracticable, the officers had no right to seize contraband seen through a window.

Finally, the government contends that Pacheco-Ruiz consented to the removal of the burlap bags from beneath his house upon inquiry by the agents, and that he therefore consented to the seizure, even though he had not consented to the search. We find this argument unconvincing. The consent was obtained under circumstances that would not support voluntariness in a civil action, must less an informed consent in a criminal case.

Pacheco-Ruiz, a Spanish-speaking person who knew he was suspected of harboring aliens, found himself confronted by armed federal officers who told him not to leave the premises. The officers told him that they had discovered the burlap bags under the house and that the officers believed them to be full of marijuana. At that point, Pacheco-Ruiz said, "I don't know, do you want to see?" The officers removed the bags, and the evidence was revealed. This episode was not a search with consent, but a quiet surrender of evidence after the search was completed. Considering the totality of the circumstances, *United States v. Townsend*, 510 F.2d 1145 (9th Cir. 1975), the consent was not freely and voluntarily given. *Compare United States v. Evans*, 519 F.2d 1083 (9th Cir.), *cert. denied*, 423 U.S. 916, 96 S.Ct. 224, 46 L.Ed.2d 145 (1975). The trial court's finding of voluntariness is clearly erroneous. *See United States v. Evans, supra.*

None of the theories offered by the government overcomes in this case the presumption that a warrantless search is unreasonable. *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Accordingly, the conviction must be reversed.

Reversed.

JAMES M. CARTER, Circuit Judge, dissenting:

This case should turn on the question of consent. A search made pursuant to voluntary consent is an established exception to the warrant requirements of the Fourth Amendment. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The test for consent is voluntariness, which in the first instance is a question of fact to be determined from all the circumstances. *Id.* at 248–49, 93 S.Ct. 2041.

In this case, the trial court held a hearing on appellant's Motion to Suppress and made these findings:

"Defendant's Motion to Suppress, having been heard by the court on August 12, 1974, and the parties having submitted memoranda in support of their respective positions on the Motion, the court finds that the seizure involved is not the product of any unlawful action or illegal search by the officers but is the result of defendant's consent and his suggestion to Agent Timilty that Timilty enter the area under defendant's house and examine what appeared to be in that location. No evidence was offered by defendant that he did not understand his rights, or that he was consenting through fear of the officers, or that his consent was coerced in any manner. The court finds that the defendant suggested the search and consented thereto in the belief that such an attitude on his part would convince the officers that defendant had no part in or knowledge concerning the location of the contraband on his premises."

On appeal, these findings will not be reversed unless clearly erroneous. *United States v. Fong*, 529 F.2d 55, 58 (9 Cir. 1975) (consent search); *United States v. Agosto*, 502 F.2d 612, 614 (9 Cir. 1974) (consent search). This standard of review is based on sound policy. The trial court hears the witnesses and passes on their credibility. As this court said in *United States v. Page*, 302 F.2d 81 (9 Cir. 1962):

"We sometimes tend to forget that the testimony of a witness, presented to us in a cold record, may make an impression upon us directly contrary to that which we would have received had we seen and heard that witness. It ought not to be

assumed that United States District Judges are any less determined to preserve constitutional rights than we are. They, too, are sworn to uphold the Constitution. That they do, in fact, take seriously their obligations to protect the constitutional rights of defendants in cases such as this is demonstrated by the many reported opinions in which they have dealt with such questions . . . ." 302 F.2d at 84 (footnotes omitted).

The record on appeal supports the trial court's findings. There was no evidence of duress or coercion, express or implied. At no time did the officers have their guns drawn. There also was no evidence to indicate that the consent was anything but freely and intelligently given. Indeed, appellant himself made the initial suggestion of the search to the officers to further his own purposes. The defendant was not under arrest at the time he consented to the search nor was he suspected of possessing narcotics. Far from being clearly erroneous, the findings of the trial court appear correct.

The majority does not respect the clearly erroneous standard on review. They first argue that there was no consent to a search at all, but merely "a quiet surrender of evidence after the search was completed." Maj. op'n at 1208. Without explaining this catch phrase, they go on to conclude that "the consent was not freely and voluntarily given." Maj. op'n at 1208. Such conclusions result from not giving proper deference to the trial court's determination.

I would AFFIRM.