**UNITED STATES of America, Plaintiff–Appellant,**

**v.**

**John Richard HUMPHRIES, Defendant–Appellee.**

No. 78–1622.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 17, 1978.

Decided Oct. 30, 1980.

Rehearing Denied Feb. 6, 1981.

Edmund G. Noyes, Jr., Asst. U.S. Atty., Phoenix, Ariz., for plaintiff–appellant.

David S. Hoffman, Tucson, Ariz., for defendant–appellee.

Before CHOY and SNEED, Circuit Judges, and KELLEHER,* District Judge.

* The Honorable Robert J. Kelleher, United States District Judge for the Central District of California, sitting by designation.

CHOY, Circuit Judge:

The United States Supreme Court vacated the judgment of our court, *United States v. Humphries,* 600 F.2d 1238 (9th Cir. 1979), and remanded the case to us for further consideration in light of *United States v. Crews,* 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980). 445 U.S. 956, 100 S.Ct. 1640, 64 L.Ed.2d 231. We have done so and now issue this revised opinion.

This is an appeal from the district court's denial of the Government's "Motion for Determination of Admissibility of Evidence" and further order that "all evidence concerning the identity and participation of defendant HUMPHRIES in this case is suppressed." We reverse and remand.

## I. *Statement of the Case*

On April 20, 1977, an indictment was returned against appellee Richard Humphries and four others and was filed in the United States District Court for the District of Arizona. The indictment charged each of the defendants with conspiracy to import marijuana, conspiracy to distribute marijuana, importation of marijuana, and attempt to possess marijuana with intent to distribute it.[1]

Humphries moved for an order suppressing his identity "as a defendant in this matter and any and all other physical evidence and statements obtained as a result of the illegal arrest of [Humphries] in this matter." Judge Muecke heard the argument on Humphries' motion and granted that motion on January 26, 1978.

■ On February 3, the Government moved for a "Determination of Admissibility of Evidence." This second motion was

heard by Judge Davies, who denied it on February 17, ordering that

all evidence concerning the identity and participation of defendant HUMPHRIES in this case is suppressed for the reason that the Plaintiff has not shown that any of said evidence is derived from a source other than the illegal arrest of defendant HUMPHRIES.

The Government appeals from this second order. On May 25, two members of this court denied Humphries' motion to dismiss the appeal for failure to file timely notice of appeal.[2]

## II. *Jurisdiction*

Humphries contends that this court is without jurisdiction over the United States' appeal in this case. He urges that the Government has attempted to circumvent the requirements of 18 U.S.C. § 3731 by moving for a "Determination of Admissibility" and appealing within 30 days of that order, but more than 30 days after the district court's initial decision on Humphries' suppression motion. We hold that we have jurisdiction to hear this appeal.

■ The courts often have been called upon to construe 18 U.S.C. § 3731, the Criminal Appeals Act.[3] Of their decisions, Professors Wright and Miller have said:

Appeals [under § 3731] are clearly allowed from interlocutory orders suppressing or excluding evidence or requiring the return of property, in marked contrast to the rules governing appeals by criminal defendants or witnesses.

15 Wright, Miller & Cooper, Federal Practice and Procedure § 3919, at 656; (footnote omitted); *see e. g., United States v. Dono-*

1. 18 U.S.C. § 2, 21 U.S.C. §§ 841(a)(1), 841(b), 846, 952(a), 960(a)(1), 960(b), 963.

2. While the motion panel was presented with the merits of the jurisdictional issue in this case, we do not consider their denial of Humphries' motion to dismiss the appeal to have foreclosed our ultimate reconsideration and disposition. *See United States v. Emens,* 565 F.2d 1142, 1144 n.2 (9th Cir. 1977).

3. In relevant part, § 3731 provides:
 An appeal by the United States shall lie to a court of appeals from a decision or order of

a district courts [sic] suppressing or excluding evidence . . . not made after the defendant has been put in jeopardy and before the verdict or finding . . . .
 The appeal shall be taken within thirty days after the decision, judgment or order has been rendered and shall be diligently prosecuted.

 * * * * *

 The provisions of this section shall be liberally construed to effectuate its purpose.

*van*, 429 U.S. 413, 421 n.8, 97 S.Ct. 658, 665 n.8, 50 L.Ed.2d 652 (1977); *United States v. Martinez–Fuerte*, 514 F.2d 308, 310 (9th Cir. 1975), *rev'd on other grounds*, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976).

Section 3731 is broadly construed, for its legislative history makes it clear

> that Congress intended to remove all statutory barriers to Government appeals and to allow appeals whenever the Constitution would permit.

*United States v. Martin Linen Supply Co.*, 430 U.S. 564, 568, 97 S.Ct. 1349, 1352–1353, 51 L.Ed.2d 642 (1977) (quoting *United States v. Wilson*, 420 U.S. 332, 337, 95 S.Ct. 1013, 1018–1019, 43 L.Ed.2d 232 (1975)).[4] The only limitation on Government appeals under § 3731 is the double jeopardy clause of the United States Constitution. *United States v. Rojas*, 554 F.2d 938, 941 (9th Cir. 1977), *supplemented*, 574 F.2d 476 (9th Cir. 1978); *see* note 4 *supra*.

Humphries contends that the Government's appeal is not properly before this court because it is a "Motion to Determine the Admissibility of Evidence" and not within the express language of § 3731. Humphries does not argue that the Government's appeal here violates the constitutional prohibition against placing him twice in jeopardy.

■ To hold that the order here is not appealable under § 3731 because a denial of a "Motion to Determine the Admissibility of

Evidence" is not a "decision . . . suppressing or excluding evidence" is to focus on the title of the Government's motion rather than the effect of the district court's order. Such an approach flies in the face of the intent of Congress and is contrary to consistent judicial authority. Section 3731 must be construed broadly; a Government appeal should not be rejected on a hypertechnical jurisdictional ground. Thus, we refuse to limit the Government's right to appeal under § 3731 solely because of the title of its motion. Instead, we "focu[s] on the effect of the ruling sought to be appealed." *United States v. Martin Linen Supply Co.*, 534 F.2d 585, 587 n.3 (5th Cir. 1976), *aff'd*, 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977); *see United States v. Wilson*, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232.

Humphries alternatively argues that the Government has in fact appealed from the January 26 order of Judge Muecke; that the Government's "Motion to Determine the Admissibility of Evidence" and its appeal from Judge Davies' order denying that motion were merely an attempt to circumvent the time limits on appeals under § 3731.

Judge Muecke's order granted Humphries' motion that

> the identity of JOHN RICHARD HUMPHRIES as a defendant in this matter and any and all other physical evidence and statements obtained as a result of

---

4. Congress has said of § 3731:

> The amended Criminal Appeal[s] Act [§ 3731] is intended to be liberally construed so as to effectiate its purpose of permitting the Government to appeal from dismissals of criminal prosecutions by district courts in all cases where the Constitution permits, and from all suppressions and exclusions of evidence in criminal proceedings, except those ordered during trial of an indictment or information.

S.Rep.No. 1296, 91st Cong., 2d Sess. (1970), at 18. "The phrase 'suppressing or excluding evidence . . .' should be read broadly, not narrowly as a similar statutory term has been interpreted." *Id.* at 37, *citing United States v. Greely*, 413 F.2d 1103 (D.C.Cir. 1969) (refusal of trial court to reopen suppression hearing is not "order, granting . . . a motion to suppress evidence" under earlier version of § 3731) as exemplifying improper narrow construction.

The conference report on the Omnibus Crime Control Act, Pub. L. No. 91–644, recognized that the Senate version of § 3731 eliminated "[t]echnical distinctions in pleadings as limitations on appeals by the United States," Conf. Rep. No. 1768, 91st Cong., 2d Sess. (1970), at 21, U.S. Code & Admin. News 1970, pp. 5804, 5848. It continued:

> The conference substitute conforms to the Senate amendment except that it provides that an appeal by the United States shall lie to a court of appeals from a decision, judgment or order of a district court dismissing an indictment or information . . . but that no appeal shall lie in any case in which the Double Jeopardy Clause of the United States Constitution prohibits further prosecution.

*Id.*

the illegal arrest of the defendant [be suppressed] in this matter.

His decision did not elaborate on what evidence was covered by his order; the opinion merely addressed the illegality of the arrest or detention of Humphries.

■ The Government made its "Motion to Determine the Admissibility of Evidence" eight days after Judge Muecke entered his order. The Government did not challenge Judge Muecke's order; instead it

5. Humphries has argued both to this court and below that the Government's motion was only an attempt to relitigate matters covered by Judge Muecke's order. The Government has countered that its motion was aimed at determining whether certain evidence was obtained as a result of the illegal arrest of Humphries and thus excluded under Judge Muecke's order.

In arguing its position, the Government points out a statement made by Humphries' counsel during the hearing before Judge Muecke:

Then, of course, we run into the problem, going down the line, as to what is or what is not tainted . . . .

Yet the order of Judge Muecke merely granted the motion by Humphries that all identification evidence as to him be suppressed. We find that the transcript of the hearing before Judge Davies further indicates the confusion of the parties and the court:

THE COURT: Gentlemen, the reason I asked you to come in, I think I know of a way to solve this thing, deny the government's motion and let them appeal it. I don't think we are going to try this case only once and in its present posture. And that way I get a chance to find out if there is any doubt about Judge Muecke's order as well.

MR. NOYES: I think if the Court is troubled by it, that is possibly the better thing to do than proceed with the trial.

THE COURT: I am troubled by it, you bet. It is going to be extremely difficult to try it in the posture of this case in view of the order and the different interpretations you gentlemen place on it.

. . . . .

THE COURT: Clearly counsel will be up more time on his feet than in his chair, objecting.

MR. HOFFMAN: I don't see how I can sit down. And I brought along uncomfortable shoes.

THE COURT: I believe that is the best way. Do you see any other —

MR. HOFFMAN: I don't, Your Honor.

THE COURT: The motion is denied.

6. In the hearing on Humphries' Motion to Suppress, the Government presented the following

sought only a decision on whether "certain identification evidence concerning defendant HUMPHRIES" was admissible under the previous order. A careful review of the transcripts and record in this case indicates that there was considerable confusion as to the scope of Judge Muecke's ruling[5] and that the testimony presented in the hearing before Judge Davies on the Government's motion was significantly different from that presented to Judge Muecke on the previous motion.[6]

evidence: (1) the testimony of Frank Sisto that he had picked up two men and taken them to the tribal store in San Carlos to await a ride home and that Humphries, seated in the courtroom, was one of those men and (2) the testimony of Everett Little Whiteman, Special Office for the Bureau of Indian Affairs, concerning the illegal arrest or detention, photographing and fingerprinting of Humphries. In support of his motion, Humphries called Douglas R. Stine, an agent of the Arizona Department of Public Safety, Narcotics Enforcement Division, who testified that his part in the investigation of this case included investigating some telephone calls from a suspect in the case to a certain address in the Phoenix area, and that in surveilling that address he identified Humphries from a driver's license photograph he had previously obtained because Agent Little Whiteman had given him Humphries' name.

In the hearing on the Government's motion before Judge Davies, the Government elicited testimony of an entirely different nature, even though the same individuals testified. The evidence in the second hearing concerned the discovery of the crash site by Agent Little Whiteman and his follow-up investigation leading to the identification of James Thompson, the pilot of the downed plane. Agent Stine testified that based on this information, which Little Whiteman gave him, and because Little Whiteman supplied Stine with Humphries' name, Stine staked out a certain address called by Thompson, identified Humphries at that address, took a photograph of Humphries at that address, and asked Thompson whether he knew Humphries and about Humphries' involvement in the marijuana smuggling operation.

Clearly, then, the evidence presented to Judge Davies in the hearing on the Government's motion did not merely duplicate that heard by Judge Muecke. Thus it does not appear to us that the Government was merely attempting to relitigate matters already determined in Judge Muecke's order. Judge Davies recognized this fact when he said,

The government may, in view of this Court, produce independent, nonrelated, untainted evidence [of Humphries' identity] in these proceedings that is not at all void by the order moved by Judge Muecke . . .

■ Given the confusion surrounding the earlier order, and that the Government indeed presented different evidence in the hearing on its motion, we cannot agree with Humphries that the Government's actions were calculated to circumvent the requirements of the Criminal Appeals Act.[7] The Government's appeal is one from Judge Davies' order suppressing all evidence relating to Humphries. Such an appeal is proper under § 3731 and was timely filed.[8] We thus have jurisdiction over this appeal.

### III. Suppression of Evidence

Judge Davies ordered that all evidence concerning Humphries' identity and participation in the marijuana smuggling operation in this case be suppressed. The Government appeals from this order only as to three categories of evidence: (1) the testimony of Frank Sisto; (2) evidence gained as the result of the surveillance of a residence in Scottsdale, Arizona; and (3) the testimony of James "Bullet" Thompson, the alleged pilot of the crashed marijuana-laden plane involved in this case.

### A. Sisto's Testimony

Frank Sisto testified that on the evening of October 23, 1976, he met two strangers at the home of his daughter, just north of San Carlos, Arizona.[9] One of the men introduced himself as "Tony" and explained that their truck had broken down about three miles north of the residence. He asked to use the telephone to call his wife to pick them up. When Sisto gave his permission to use the phone, "Tony" asked where the best place to wait for his wife would be. Sisto suggested the San Carlos police station but "Tony" said that he did not wish to wait there. Sisto then suggested the tribal store in San Carlos and offered to give the two men a ride to that point. "Tony" accepted Sisto's offer. After taking the two men to the store, Sisto called the police station because he was "worried" and had a "funny feeling" about them.

Sisto's message was passed along to Bureau of Indian Affairs (BIA) Special Agent Little Whiteman, who was investigating a downed aircraft loaded with marijuana near the area where Sisto initially saw the two men. Little Whiteman ordered one of his officers to go to the tribal store to see if the two were still there. Upon receiving word that the two men were still at the tribal store, Little Whitman ordered them brought in for questioning. This detention was held an illegal arrest by Judge Muecke.[10]

■ In court Sisto pointed to Humphries as one of the men to whom he had

and when he made it clear that his denial of the Government's motion was based not on the ground "that it was encompassed by Judge Muecke's order" but on the ground that the Government had failed to meet the Ninth Circuit requirements as to its burden of showing that the evidence offered was not tainted by the illegal arrest/detention. We agree with Judge Davies' position that the Government's motion was not foreclosed by Judge Muecke's ruling.

7. Even if we assume, arguendo, that Humphries is correct in characterizing the Government's motion and appeal from Judge Davies' order as an attempt to relitigate a matter already decided by Judge Muecke, and that he is correct in his contention that the appeal is in fact one from the order of Judge Muecke, this appeal would not be barred by the 30–day limitation contained in § 3731. That limitation period is not jurisdictional. Meier v. Keller, 521 F.2d 548, 553 (9th Cir. 1975), cert. denied, 424 U.S. 943, 96 S.Ct. 1410, 47 L.Ed.2d 348 (1976). Although appeals after the 30–day period are "not to be regarded with favor," id., where, as here, there is no showing of bad faith

on the part of the Government in delaying the appeal, no prejudice has resulted to any party, and the Government appears to be prosecuting the case diligently, this court may exercise jurisdiction over an appeal under § 3731. The Government should not be penalized for providing the district court with an opportunity to reconsider its earlier decision, especially when there appears to be a great deal of confusion about the meaning of that decision.

8. Judge Davies' order was entered on February 17, 1978. The Government filed its appeal with this court on March 17, 1978, within the 30–day limit of § 3731.

9. San Carlos is wholly within an Apache Indian Reservation. The police organ in San Carlos is headed by Bureau of Indian Affairs Special Agent Everett Little Whiteman.

10. The Government does not take issue with Judge Muecke's ruling that the San Carlos detention of Humphries was an illegal arrest.

given a ride. His testimony and identification were based solely on his contact with Humphries and his codefendant, Richardo Rubio ("Tony") prior to the unlawful arrest. It is not in any way a "fruit" of that unlawful arrest. *See United States v. Williams*, 436 F.2d 1166, 1170 (9th Cir. 1970), *cert. denied*, 402 U.S. 912, 91 S.Ct. 1392, 28 L.Ed.2d 654 (1971). Thus, we reverse Judge Davies' order insofar as it suppresses Sisto's testimony.[11]

## B. *The Surveillance Evidence*

Agent Little Whiteman testified before Judge Davies concerning the discovery of a downed airplane containing a large quantity of marijuana. He related the discovery of papers in the plane and his follow-up investigation which led to the identification of James "Bullet" Thompson as the pilot of that aircraft. This information, along with information obtained during the illegal arrest and detention of Humphries (name, address, fingerprints and photograph), was eventually passed to Agent Stine of the Arizona Department of Public Safety, Narcotics Enforcement Division (DPS). Little Whiteman also gave Stine the description and license number of a beige 1971 Chevrolet Monte Carlo that he had stopped near the crash site.

On the basis of this information, Stine obtained a driver's license photograph of Humphries and proceeded to attempt to locate the pilot, Thompson, by investigating a Scottsdale address called by Thompson while he was in Chicago. Arriving at the Scottsdale residence, Stine noticed a beige Monte Carlo in the driveway. Unable to read the license plate from the street, he drove up the driveway and positively identified the auto as the one stopped by Little Whiteman. He also noticed two persons at

the residence while in the driveway, one of whom he identified as Humphries from the driver's license photo in his possession.

Relying on the information from Little Whiteman and his observations while in the driveway, Stine ordered around-the-clock surveillance of the Scottsdale address. During the course of their stakeout, DPS agents photographed Humphries and others at the residence.

In the hearing before Judge Davies, the Government stipulated that it would not introduce evidence concerning the identification of Humphries made by Stine in the driveway of the Scottsdale residence. Therefore, we are concerned only with the admissibility of the license number of the Monte Carlo and the photographs and other evidence garnered as a result of the surveillance of the residence.

### 1. *Identification of the automobile in Scottsdale*

■ The license plate number and description of an automobile which Stine had when he spotted the car in Scottsdale and entered the driveway to check the license plate of that car was derived from a stop of a vehicle by BIA agents. The legality of that stop is unchallenged in this case. Moreover, the stop was wholly unrelated to the illegal arrest of Humphries. Thus, the BIA information concerning the auto stopped near the crash site was untainted; its use by Stine was not improper.

However, Humphries points out that Stine matched the license plate number of the car in Scottsdale with the number in his possession only by trespassing onto a private driveway. Judge Davies' order and opinion, holding as it did that the license number identification was tainted by Hum-

---

11. Humphries argues that the Government is barred from contesting the suppression of Sisto's testimony as Sisto did not testify before Judge Davies. However, Sisto did testify before Judge Muecke. As we have indicated *supra*, Judge Muecke's order left the parties in some confusion over what evidence had in fact been suppressed. In the memorandum accompanying the Government's motion, essentially one to determine the scope of Judge Muecke's

order, it was argued that Sisto's testimony was free of the taint of the illegal arrest of Humphries.

Thus, the issue of the admissibility of Sisto's testimony was squarely before Judge Davies. We do not believe that it is necessary that Sisto have testified before Judge Davies for this court to review the suppression of his testimony, given the procedural posture of the Government's motion below.

phries' illegal arrest, did not reach Humphries' trespass theory. Since we have concluded that the illegal arrest of Humphries did not taint the BIA information concerning the auto stopped near the crash site, we must reach this claim.

In *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), the Supreme Court noted that "[t]he premise that property interests control the right of Government to search and seize has been discredited." *Id.* at 353, 88 S.Ct. at 512 (quoting *Warden v. Hayden*, 387 U.S. 294, 304, 87 S.Ct. 1642, 1648–1649, 18 L.Ed.2d 782 (1967)). It concluded that "the Fourth Amendment protects people, not places." *Id.* 389 U.S. at 351, 88 S.Ct. at 511; *see Warden v. Hayden*, 387 U.S. at 304, 87 S.Ct. at 1648–1649 ("the principal object of the Fourth Amendment is the protection of privacy rather than property"). "[T]he reach of [the Fourth] Amendment cannot turn upon the presence or absence of a physical intrusion . . . ." *Katz v. United States*, 389 U.S. at 353, 88 S.Ct. at 512.

■ Only when there is an invasion of some reasonable expectation of privacy can police action constitute a search subject to the strictures of the fourth amendment. *See United States v. Santana*, 427 U.S. 38, 42, 96 S.Ct. 2406, 2409, 49 L.Ed.2d 300 (1976); *Katz v. United States*, 389 U.S. at 349–53, 88 S.Ct. at 509–512. Although a driveway may be private under common law notions of property, it may not be for purposes of the fourth amendment. *See United States v. Santana*, 427 U.S. at 42, 96 S.Ct. at 2409 (doorway of private home a "public place" where visible from street); *United States v. Hersh*, 464 F.2d 228, 230 (9th Cir. 1972) (officers going upon front porch of house and looking into window did not violate fourth amendment privacy rights).

■ Considering all of the circumstances surrounding Stine's entry into the driveway and identification of the Monte Carlo as the automobile previously stopped by BIA agents near the crash site, we conclude that the entry and identification did not violate any reasonable expectation of privacy held by Humphries. The auto was visible from the street. It does not appear from the record that the driveway was enclosed by a fence, shrubbery or other barrier. Stine did not move bushes or other objects in order to make his observations. *See United States v. Hersh*, 464 F.2d at 230; *United States v. Davis*, 327 F.2d 301, 303–04 (9th Cir. 1964). Moreover, a license plate is affixed on an automobile for the very purpose of allowing identification of it by law enforcement agencies and others.[12]

Thus, Stine's conduct did not constitute a search subject to fourth amendment limitations. His testimony regarding his identification of the car was improperly suppressed. We reverse Judge Davies' order insofar as it suppresses that testimony.

2. *Photographs and other surveillance evidence*

Agent Stine testified that the surveillance of the Scottsdale residence was undertaken because of his identifications both of Humphries and of the automobile, while Stine was in the driveway of that address. Initially, however, he was investigating that address because Thompson made a telephone call to there from Chicago.

In *Wong Sun v. United States*, the Supreme Court announced the appropriate test of whether evidence is inadmissible as the fruit of unlawful police action:

Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distin-

---

**12.** We do not today hold that the license number of an automobile is never protected by the fourth amendment. Instead, we only recognize that the nature of a license plate, something designed specifically for identification purposes, affects the reasonableness of expectations of privacy concerning it. In this case, all of the circumstances surrounding Stine's actions indicate that Humphries had no reasonable expectation of privacy as to the license number of the auto parked in the Scottsdale driveway. The nature of the license plate is only one factor in our decision.

guishable to be purged of the primary taint."

371 U.S. 471, 488, 83 S.Ct. 407, 417–418, 9 L.Ed.2d 441 (1963), (quoting Maguire, Evidence of Guilt 221 (1959)). Exploitation of illegalities is the focus of the fruit doctrine for the reason that the exclusionary rule is aimed at deterring police conduct in violation of the fourth amendment "in the only effectively available way—by removing the incentive to disregard it." *Stone v. Powell*, 428 U.S. 465, 484, 96 S.Ct. 3037, 3047, 49 L.Ed.2d 1067 (1976), (quoting *Elkins v. United States*, 364 U.S. 206, 217, 80 S.Ct. 1437, 1444, 4 L.Ed.2d 1669 (1960)).

Concern for fourth amendment rights must be balanced against the costs of the exclusionary rule, for

> [a]pplication of the rule ... deflects the truthfinding process and often frees the guilty. The disparity in particular cases between the error committed by the police officer and the windfall afforded a guilty defendant by application of the rule is contrary to the proportionality that is essential to the concept of justice. Thus, although the rule is thought to deter unlawful police activity in part through the nurturing of respect for Fourth Amendment values, if applied indiscriminately it may well have the opposite effect of generating disrespect for the law and administration of justice.

*Id.* 428 U.S. at 490–91, 96 S.Ct. at 3050–3051 (footnotes omitted).

 Balancing our concern for the protection of Humphries' fourth amendment rights against our concern for the truth, and in light of *United States v. Crews*, 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980), we hold that the exclusionary rule and the fruit–of–the–poisonous–tree doctrine do not bar the use of any of the evidence gained as a result of the surveillance of the Scottsdale residence.

Applying the three–part test in *Crews* (see section C *infra*), the Supreme Court held that information antedating an unlawful arrest is not necessarily tainted by the unlawfulness of the subsequent arrest. Although Stine used information gathered during Humphries' detention to identify Humphries in Scottsdale, he also based his decision to set up a surveillance of the house on the identification of the automobile and, undoubtedly (since Stine ordered surveillance of the house, not of Humphries), also on the connection of the Scottsdale residence to Thompson, both of which facts were obtained from independent sources available before the illegal arrest. The reliability of the evidence obtained from the surveillance was not infected by the tainted identification of Humphries. Furthermore, just as Humphries is not immune from prosecution because of the initial illegal arrest, so too is he not immune from investigation merely because of the illegal arrest. Because there was an independent basis for setting up the surveillance of the house, we find that it was error to suppress the photographs and other evidence obtained from the surveillance. *See United States v. Crews*, 100 S.Ct. at 1246–47; *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319 (1920).

### C. *Thompson's Testimony*

James "Bullet" Thompson was located by Agent Stine from information discovered by BIA agents investigating the crashed airplane near San Carlos.[13] There was no taint from the illegal arrest attaching to Stine's location of Thompson. Once located, however, Thompson implicated Humphries in the marijuana smuggling operation only upon being asked specifically about him. And Stine questioned Thomp-

---

**13.** BIA agents discovering the downed aircraft located a motel receipt inside the cockpit in Thompson's name. They also received information from a truck driver who took a man from the area of the crash to the local airport. The airport manager told them that the hitchhiker had called a taxi and in checking with the motel to which the taxi took the hitchhiker, they discovered his name: James "Bullet" Thompson. In following up these leads, Stine located Thompson. It therefore appears that Stine's discovery of Thompson was in no way related to the illegal arrest of Humphries.

son specifically about Humphries because of information tainted by the illegal arrest.[14]

The trial court suppressed not only this pretrial identification of Humphries, but also Thompson's in–court testimony identifying Humphries as a participant in the smuggling operation. Under *United States v. Crews,* 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980), however, Thompson's in–court testimony is admissible and should not have been suppressed.

In *Crews,* the defendant was illegally arrested and photographed. A victim identified the defendant from this photograph and later picked him out of a lineup. These pretrial identifications were suppressed, but the victim's courtroom identification was held admissible. *Id.* at 1250.

There are three elements of in–court identification testimony, the Court held: (1) the witness' presence in court, (2) the ability of the witness to identify the defendant as the perpetrator of the crime, and (3) the presence of the defendant in court. *Id.* The test for admissibility is whether any of these elements " 'has been come at by exploitation' of the violation of the defendant's Fourth Amendment rights." *Id.,* (quoting *Wong Sun,* 371 U.S. at 488, 83 S.Ct. at 417–418.)

### 1. *Thompson's presence in court*

We have already held that the location of Thompson as a witness was not tainted in any way by Humphries' illegal arrest. Thus, his presence in court was unobjectionable.

### 2. *Thompson's ability to identify Humphries*

 Under the Supreme Court's analysis in *Crews,* the question here is whether "the witness' courtroom identification rested on an independent recollection ..., uninfluenced by the [tainted] pretrial identifications...." *Id.* at 1251. The Court upheld the trial court's affirmative finding on this question. *Id.* & n.18.

Although the district court here did not reach this issue and therefore made no such finding, under the circumstances of this case there can be no other finding but that Thompson's identification of Humphries is based on his independent recollection, uninfluenced by the pretrial identification procedures. As a coconspirator, Thompson had intimate knowledge of Humphries' involvement in the conspiracy; this knowledge antedated any police misconduct. And there is no danger that any suggestiveness in the pretrial identification procedures would render Thompson's in–court identification unreliable. *See id.* at 1250.

Thus, as in *Crews,* even though the witness' pretrial identification of the defendant was based on information and photographs obtained from the defendant's illegal arrest, the witness' ability to identify the defendant in court "has not been come at by exploitation" of that illegal arrest.

### 3. *Humphries' presence in court*

 A majority of the Supreme Court in *Crews* agreed that under *Frisbie v. Collins,* 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952), the defendant's presence in the courtroom cannot be attacked as the fruit of an illegal arrest. 100 S.Ct. at 1253–54 (White, J., concurring in the result); *id.* (Powell, J., concurring in part).

Thus, all three elements satisfy the *Crews* test and Thompson's in–court testimony

---

**14.** Stine claims to have had knowledge of Humphries' identity and possible involvement in the smuggling venture through two separate sources. The first of these was through information obtained during the illegal arrest of Humphries.

Humphries' name had also entered the investigation when BIA agents stopped Lon Raymond Jordan near the crash site. Stine knew Jordan to have been arrested for drug–related offenses in the past. He therefore obtained a list of Jordan's known associates, among whom was Humphries.

In response to questioning by defense counsel, Stine testified that Jordan had "[r]oughly 30 to 40" known associates all of whom were "checked out." Driver's license pictures of each were compared to photos taken during the surveillance of the house in Scottsdale.

The BIA information about Humphries was obtained during the arrest, while the BIA information concerning Jordan indicated that Humphries was a suspect only when the pictures of Jordan's associates were compared with pictures taken during the surveillance.

identifying Humphries as a member of the marijuana smuggling conspiracy is admissible.

### IV. *Conclusion*

Sisto's testimony and Thompson's testimony are not fruits of Humphries' illegal arrest. Each was available and admissible because it was based upon independent recollections of pre–arrest events. Furthermore, the surveillance was based upon the identifications, from independent sources, of the Scottsdale residence and of the beige Monte Carlo, and, thus, the evidence obtained therefrom was admissible. We reverse the order suppressing the evidence and remand for proceedings consistent with this opinion.

REVERSED and REMANDED FOR FURTHER PROCEEDINGS.