861 F.2d 269
 Unpublished Disposition
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 
 UNITED STATES of America, Plaintiff-Appellee,
v.
Ernest Javier GARCIA, Defendant-Appellant.
 No. 87-1388.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 4, 1988.
Decided Oct. 25, 1988.
 Before TANG, DAVID R. THOMPSON and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Ernest Javier Garcia appeals his conviction entered upon his conditional guilty plea to violating 21 U.S.C. Sec. 846, conspiracy to distribute 170 pounds of marijuana. He challenges the district court's denial of his motion to suppress the marijuana. We have jurisdiction under 28 U.S.C. Sec. 1291 and Fed.R.Crim.P. 11(a)(2), and we affirm.
 
 STANDARD OF REVIEW
 
 3
 The district court did not file factual findings or conclusions of law in support of its denial of Garcia's motion to suppress. Nor did Garcia request such findings.
 
 
 4
 "Where no findings of fact were made or requested, we will uphold a trial court's denial of a motion to suppress if there is a reasonable view of the evidence that will sustain it." United States v. Harrington, 636 F.2d 1182, 1185 (9th Cir.1980) (citations omitted). The evidence is viewed in the light most favorable to the government. Id. (citations omitted).
 
 
 5
 United States v. Rabe, 848 F.2d 994, 997 (9th Cir.1988); United States Cervantes-Gaitan, 792 F.2d 770, 772 (9th Cir.1986).[1]
 
 LEGALITY OF THE INITIAL STOP
 
 6
 We hold that the agents properly stopped the truck Garcia was driving and that the action was an investigatory stop rather than a full arrest. We first consider the legality of the decision to stop the vehicle.
 
 
 7
 Away from the border or its functional equivalents and aside from some narrow exceptions, law enforcement officials may only stop a vehicle if, given the totality of facts, they have a reasonable suspicion that the particular vehicle is engaged in criminal activity. See United States v. Cortez, 449 U.S. 411, 422 (1981); United States v. Brignoni-Ponce, 422 U.S. 873, 884 (1975). Specific articulable facts must support this suspicion. Id.; United States v. Sutton, 794 F.2d 1415, 1426 (9th Cir.1986).
 
 
 8
 In Brignoni-Ponce, the Supreme Court noted that: "Any number of factors may be taken into account in deciding whether there is a reasonable suspicion to stop a car in the border area." 422 U.S. at 884. Cf. United States v. Magana, 797 F.2d 777, 780 (9th Cir.1986). In this case, numerous factors singled out the pickup truck driven by Garcia as suspicious to the border patrol agents.
 
 
 9
 On June 30, 1987, border patrol agents Tuffly and Slagle observed a pickup truck moving eastbound along State Route 86 in the Tohono O'Odham Indian Reservation. The record, read in the light most favorable to the government, shows that the agents had the following reasons to suspect that the truck was involved in illegal activity: (1) a United States Customs report warned them that a load of narcotics would be crossing the border near the place where they stopped Garcia, (2) the pickup truck was dirty and appeared to have off-road tires suggesting that it might have traversed the unpaved border area, (3) the truck traveled on a highway commonly used by smugglers, (4) the truck's smokey exhaust had the distinctive odor of Mexican gas suggesting that it came from across the border, (5) a check on the license plates of the truck showed that the plates had expired four months earlier,[2] and (6) the driver, Garcia, appeared nervous as the agents followed him and he looked back at the agents ten or twenty times in his mirror.[3] These facts formed the basis for a reasonable suspicion sufficient to stop the pickup truck.
 
 
 10
 Having held that the border agents' decision to stop the truck was proper, we now consider whether the agents' conduct so intruded upon Garcia's rights so as to constitute an arrest rather than an investigatory stop. Garcia and Marcus Gallardo assert that, after being signaled by the agents, they stopped the truck and got out. Agent Slagle pointed his shotgun at Gallardo's head. Slagle ordered Gallardo to get back into the truck threatening to "blow his head off" if he didn't. Reporter's Transcript at 81, 84. Agent Tuffly's testimony did not contradict these assertions. Agent Slagle did not testify. Garcia argues that the arresting officers used excessive force during the encounter and that this use of force transformed an investigatory stop into an arrest. We disagree.
 
 
 11
 In Michigan v. Long, 463 U.S. 1032, 1051 (1983), the Supreme Court held that: "In evaluating the validity of an officer's investigative or protective conduct under Terry, the '[t]ouchstone of our analysis ... is always "the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." ' " The Court noted that in a Terry investigation, the officer is "particularly vulnerable in part because a full custodial arrest has not been effected, and the officer must make a 'quick decision as to how to protect himself and others from possible danger.' " Id. at 1052; see also Pennsylvania v. Mimms, 434 U.S. 106, 109-11 (1977) (per curiam). Thus, our inquiry is whether the deadly force allegedly threatened was reasonable under the circumstances.
 
 
 12
 We have upheld police conduct in Terry stops when force has been used. See, e.g., United States v. Buffington, 815 F.2d 1292, 1300-01 (9th Cir.1987) (forcing defendants to exit car and to lie face down on the pavement at gunpoint); United States v. Jacobs, 715 F.2d 1343, 1346 (9th Cir.1983) (approaching with drawn gun and ordering suspect to "prone out"); United States v. Taylor, 716 F.2d 701, 708 (9th Cir.1983) (stopping suspects at gunpoint and handcuffing them); Bautista, 684 F.2d at 1289-90 (handcuffing defendants during questioning). We recognize that Terry stops subject police officers to considerable danger. Thus, we give officers some leeway in choosing the means to protect themselves.
 
 
 13
 Viewing the evidence in the light most favorable to the government, Agents Tuffly and Slagle confronted a group of suspected drug smugglers. The suspects outnumbered the officers by two to one. A show of force and a brusque command to get back into the truck was reasonable. If, in the heat of the encounter, Agent Slagle spoke brashly, we cannot say that this isolated threat transformed the stop into an arrest.
 
 
 14
 Garcia relies on United States v. Beck, 598 F.2d 497, 501 (9th Cir.1979), to argue that the show of force exceeded the reasonable bounds of a Terry stop. However, Beck is distinguishable. In Beck, the arresting officials had encountered the defendants before and had kept them under surveillance for several days prior to the arrest. During this time, there was no evidence that the defendants were armed or dangerous. Id. at 501. During the course of the arrest, the officers physically escorted the defendants to separate locations despite the defendants' unhesitating cooperation with the officers' commands. Id. at 502. In contrast, Agents Tuffly and Slagle had no basis to believe that Garcia and the others were not dangerous. On the contrary, they were suspected drug smugglers, and the driver had appeared nervous in looking repeatedly into the truck's rear view mirror just before it was stopped. Pointing a shotgun at Gallardo and ordering him back into the car did not convert the Terry stop into an arrest under these circumstances. See Jacobs, 715 F.2d at 1346; Taylor, 716 F.2d at 708; and see United States v. Patterson, 648 F.2d 625, 633 (9th Cir.1981) (distinguishing Beck ).
 
 
 15
 Garcia tries to distinguish the numerous cases which allow police officials to take protective measures by noting that Agents Tuffly and Slagle failed to promptly search the suspects or to take any protective measures beyond ordering the passengers into the truck. He contends that this failure demonstrates that the agents were not motivated by security concerns. Instead, Garcia argues that the agents' sole purpose in making a show of force was to intimidate the suspects. We disagree. The evidence viewed in the light most favorable to the government suggests that the agents acted prudently to protect themselves. The stop was a proper Terry stop.
 
 THE LEGALITY OF THE VEHICLE SEARCH
 
 16
 Having decided that the encounter between Garcia and the agents was a proper Terry stop, we now consider whether Garcia consented to the search of the rear portion of the pickup.[4] We can only uphold such a warrantless search based on consent if "consent was in fact voluntarily given, and not the result of duress or coercion, express or implied." Schneckloth v. Bustamonte, 412 U.S. 218, 248 (1973). "Voluntariness is a question of fact to be determined from all the circumstances...." Id. at 248-49.
 
 
 17
 According to Agent Tuffly, Garcia freely consented to the search. Tuffly testified that:
 
 
 18
 Q. All right. What did you do then?
 
 
 19
 A. I then asked Mr. Garcia what was in the back of the pickup.
 
 
 20
 Q. Did Mr. Garcia reply?
 
 
 21
 A. Yes, he asked me: Do you want to see?
 
 
 22
 Q. What did you say to that?
 
 
 23
 A. I said: Sure, I'll take--I don't remember the exact words, but I responded that I would.
 
 
 24
 Q. What did you do after that?
 
 
 25
 A. He then exited the vehicle and--
 
 
 26
 Q. "He" being Mr. Garcia?
 
 
 27
 A. Mr. Garcia. And he walked to the back and opened up the door of the shell.
 
 
 28
 Reporter's Transcript at 17. While Garcia vigorously disputes Tuffly's account, we must view the evidence in the light most favorable to the government. Therefore, we credit the agent's version of the events.
 
 
 29
 Garcia mistakenly relies on United States v. Allard, 600 F.2d 1301, 1304 (9th Cir.1979), and United States v. Pacheco-Ruiz, 549 F.2d 1204, 1208 (9th Cir.1976). Both cases are distinguishable.
 
 
 30
 First, the statement made in Allard differs substantially from Garcia's statement. When the agents asked for permission to enter his hotel room, the occupant in Allard said: "I suppose I don't have any choice." Id. at 1303. We held that this statement was sufficiently ambiguous to allow the district court reasonably to conclude that the occupant "knew it would be hopeless to refuse entry and that his consent was therefore not freely and intelligently given." Id. at 1304. In contrast, Agent Tuffly's testimony supports a finding that Garcia's consent was clear and voluntary.
 
 
 31
 More importantly, in Allard, we reviewed the district court's finding of no consent for clear error. 600 F.2d at 1304. In the present case, we review the issue de novo and interpret the evidence in a light favorable to the government. Thus, a conclusion that Garcia consented to the search is perfectly consistent with the holding in Allard.
 
 
 32
 Pacheco-Ruiz is also distinguishable. There, the agents obtained the purported consent after an illegal search had led to the discovery of the sought-after items. 549 F.2d at 1208. The authorities sought the suspect's consent to the seizure of items already discovered by an illegal search. Id. In contrast, Garcia's consent was untainted by any unlawful search or seizure. On these facts, we hold that Garcia's consent was voluntary.
 
 
 33
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Garcia argues that this court must review the denial of his motion to suppress de novo. Cf. United States v. Howard, 828 F.2d 552, 554 (9th Cir.1987) ("[w]e review de novo motions to suppress"); United States v. Feldman, 788 F.2d 544, 550 (9th Cir.1986) (suggesting that decisions supported by inadequate findings of fact are subject to de novo review). We agree. However, while we review the legal theories de novo, we review the evidence supporting these theories in the light most favorable to the government
 
 
 [2]
 Garcia argues that the expiration of the license plates was not a criminal violation of Arizona law. However, the expired plates are significant because, as Agent Tuffly testified, smugglers often buy cars and then fail to register them so that the cars cannot be traced to their new owners. Certainly, in combination with the other factors noted, the expiration of the license plates is an articulable fact supporting the agents' reasonable suspicion
 
 
 [3]
 The agents also noted that the occupants of the truck appeared to be Hispanic. They considered this noteworthy because they had received a report that narcotics were coming from Mexico and the truck was traveling a road through an Indian reservation where almost all of the residents were Indians. We do not rely on this factor in our analysis. We point out, however, that contrary to Garcia's contention, depending on the circumstances of the case, "[t]reating racial appearance as one factor contributing to the founded suspicion of the criminal conduct [is] not inappropriate." United States v. Bautista, 684 F.2d 1286, 1289 (9th Cir.1982), cert. denied, 459 U.S. 1211 (1983)
 
 
 [4]
 We do not decide whether Agent Tuffly's observation of the trash bags justified a search under the plain view exception because we hold that Garcia consented to the search