The STATE of Texas, Appellant,

v.

Matthew MEDRANO, Appellee.

No. 527–99.

Court of Criminal Appeals of Texas, En Banc.

Feb. 6, 2002.

---

8. *Id.* at 13, at 888.

Luis E. Islas, El Paso, for Appellant.

Betty Marshall, Asst. State Atty., Matthew Paul, State's Atty., Austin, for State.

## OPINION

COCHRAN, J., delivered the opinion of the Court in which KELLER, P.J., KEASLER, HERVEY, and HOLCOMB, JJ., joined.

The issue in this case is whether article 44.01(a)(5)[1] of the Texas Code of Criminal Procedure permits the State to bring a pretrial appeal of an adverse ruling on a motion to suppress evidence when the trial court does not conclude that the evidence was "illegally obtained." Although this Court, in State v. *Roberts*, 940 S.W.2d 655 (Tex.Crim.App.1996), held that the State cannot appeal a pretrial evidentiary ruling unless the defendant claims that the evidence was "illegally obtained," neither the language of the statute nor legislative intent supports this limitation. It is not consistent with the interpretation other state or federal courts have given to the same or similar language in their government-appeal statutes. Moreover, the rule in *Roberts* has proved unworkable in practice. Therefore, we overrule *Roberts* and hold that under article 44.01(a)(5), the State is entitled to appeal any adverse pretrial ruling which suppresses evidence, a confession, or an admission, regardless of whether the defendant alleges, or the trial court holds, that the evidence was "illegally obtained."

## I.

Appellee, Matthew Medrano, was charged with capital murder for the robbery-murder of Benton Smith, a pizza delivery man. The State's only witness to the robbery-murder was Jennifer Erivez, a fourteen-year-old girl, who was standing in the driveway of her home at about 10:00 p.m. waiting for her boyfriend. Jennifer testified that she saw the pizza delivery man drive by and park down the street. Then she saw a maroon car, like a Chrysler LeBaron, drive past slowly and stop under a street light. A man got out of the front passenger side and did something like take the license plate off of the car. Jennifer saw the man's face clearly, but could not recall the car's license plate number. The car then drove further down the street and parked behind the pizza delivery man's truck. The same man got out of the car and walked up to the pizza delivery man. Jennifer heard a gunshot and then saw the man run back to the car. He got in, and the driver sped away.

A few hours later, Jennifer gave police a written description of the person she had seen get out of the car and approach the pizza delivery man:

> The front seat passenger is Hispanic, between 17–21 years old, tall, maybe about 6' tall, medium build, short dark colored hair combed back. I did not see any facial hair, and he was wearing a black long sleeve-shirt and underneath he was wearing a white muscle T-shirt-shirt, loose fitting black pants and black shoes.

Jennifer also stated that the maroon car contained a total of four people. Because she was unable to recall the car's license

---

1. Article 44.01(a), in pertinent part, provides: The State is entitled to appeal an order of a court in a criminal case if the order:

 (5) grants a motion to suppress evidence, a confession, or an admission, if jeopardy has not attached in the case and if the prosecuting attorney certifies to the trial court that the appeal is not taken for the purpose of delay and that the evidence, confession, or admission is of substantial importance to the case.

 TEX.CODE CRIM. PROC. Art. 44.01(a).

plate number, an El Paso police officer, trained in hypnosis, conducted a video-taped hypnotic session the next day. She was still unable to recall the license plate number. About a week later, the police conducted two photo lineups for Jennifer. She did not identify anyone in those line-ups.[2] After she identified Mr. Medrano as the shooter in a third photo lineup two days later, he was arrested and charged with capital murder.

Defense counsel filed a "Motion to Suppress In Court Identification"[3] based upon *Zani v. State,* 758 S.W.2d 233 (Tex.Crim.App.1988), Tex.R. Evid 403, the 6th and 14th Amendments to the U.S. Constitution, and Article 1, Sections 10 & 13 of the Texas Constitution. After a pretrial suppression hearing, the trial judge orally granted the defense motion. Her written order stated that she granted the motion "for the reasons stated on the record" at the hearing and that she "also f[ound] said identification was obtained in violation of the 4th, 5th, 6th and 14th Amendments of the United States Constitution and Article I, sections 9, 10, 13, and 19 of the Texas Constitution."

The State certified that it could not prosecute the case without Jennifer's testi-mony and filed an appeal with the El Paso Court of Appeals. The Court of Appeals dismissed the State's appeal for want of jurisdiction. *State v. Medrano,* 987 S.W.2d 600 (Tex.App.-El Paso 1999). That court concluded:

> We find that, although the trial court framed her order to conclude that con-stitutional provisions had been violated, her findings were the result of a balanc-ing test conducted under Texas Rule of Evidence 403....
>
> Thus, although constitutional implica-tions may be present in this decision, we find it was not a "suppression" in the sense contemplated by Texas Code of Criminal Procedure, Article 44.01(a)(5) and the case law interpreting it.

*Id.* at 604 (footnote omitted). The State Prosecuting Attorney filed a petition for discretionary review with this Court.[4]

## II.

▮▮▮ Article 44.01 was enacted as a vehicle for the State to challenge "ques-tionable legal rulings excluding what may be legally admissible evidence[.]"[5] The

---

2. Mr. Medrano's photo was not in either of those lineups.

3. There were two different motions to sup-press evidence based upon Jennifer's photo-graphic identification and her in-court iden-tification. Both were called motions to suppress identification.

4. The Questions presented by the State Prose-cuting Attorney were:
 1. Whether the Court of Appeals erred in holding that, under *State v. Roberts,* 940 S.W.2d 655 (Tex.Crim.App.1996), it had no jurisdiction to consider the State's appeal in this case?
 2. Whether the Court should reconsider its decision in *State v. Roberts,* 940 S.W.2d 655 (Tex.Crim.App.1996)?

5. Bill Analysis, S.B. 762, Acts 1987, 70th Leg., ch. 382, § 1 (codified at Tex.Code Crim. Proc.

art. 44.01). The "Background" Section of the bill analysis begins:

> The Texas Constitution provides that the State has no right to appeal in a criminal case, making Texas the only state that bans all prosecution appeals. This prohibition is viewed as a serious problem in the adminis-tration of justice for several reasons: (1) On occasion, defendants are released because of questionable legal rulings excluding what may be legally admissible evidence; (2) Legal issues that have been wrongly decided by trial courts nevertheless stand as precedent, albeit unbinding, for police, prosecutors, and courts; and (3) Trial judges may have a ten-dency to resolve doubtful legal questions in favor of the defendant because such a ruling cannot harm the judge's reversal rate.

purpose of the statute is to permit the pretrial appeal of erroneous legal rulings which eviscerate the State's ability to prove its case. The Texas legislature, in passing Senate Bill 762 in 1987, clearly intended to provide Texas prosecutors with the same vehicle of appeal for pretrial evidentiary rulings as federal prosecutors. As this Court noted in *State v. Moreno*, 807 S.W.2d 327, 332 (Tex.Crim.App.1991), "when our Legislature adopted Article. 44.01 in 1987, it made clear its intent to afford the State the same powers afforded the federal government under 18 U.S.C. § 3731." There is no question that under 18 U.S.C. § 3731, federal prosecutors may appeal a wide variety of pretrial evidentiary rulings-not just those tied to motions to suppress illegally obtained evidence.[6] Similarly, there is no question that the federal statute is liberally construed.[7] The Texas Legislature modeled art. 44.01 after the corresponding federal provision generally.[8] The section at issue here, section

**6.** *See e.g., United States v. Humphries,* 636 F.2d 1172 (9th Cir.1980)(reversing the district court's order that "all evidence concerning the identity and participation of defendant is suppressed"); *United States v. Flores,* 538 F.2d 939 (2nd Cir.1976)(reversing pretrial ruling which barred government from introducing prior bad act evidence against the defendant); *United States v. Valencia,* 826 F.2d 169(2nd Cir.1987)(affirming pretrial order excluding out-of-court statements made by a defendant's counsel in effort to secure bail for client.); *United States v. Helstoski,* 576 F.2d 511 (3d Cir.1978)(affirming trial court's exclusion of legislative materials and legislative correspondences to prove allegations of indictment); *United States v. Fatico,* 579 F.2d 707 (2nd Cir.1978)(reversing trial court's order excluding evidence supplied by unidentified Mafia member that defendants were connected to organized crime for use in sentencing hearing).

**7.** Responding to the defendant's contention that the government's appeal was jurisdictionally barred because its pretrial motion was called a "Motion to Determine the Admissibility of Evidence," which was not within the express language of § 3731, the court in *Humphries* stated:

To hold that the order here is not appealable under § 3731 because a denial of a "Motion to Determine the Admissibility of Evidence" is not a "decision ... suppressing or excluding evidence" is to focus on the title of the Government's motion rather than the effect of the district court's order. Such an approach flies in the face of the intent of Congress and is contrary to consistent judicial authority. Section 3731 must be construed broadly; a Government appeal should not be rejected on a hyper-

technical jurisdictional ground. Thus, we refuse to limit the Government's right to appeal under § 3731 solely because of the title of its motion. Instead, we "focus on the effect of the ruling sought to be appealed."

*Humphries,* 636 F.2d at 1175; *see also United States v. Horwitz,* 622 F.2d 1101 (2nd Cir.1980)(noting jurisdiction under § 3731 despite conditional nature of district court's ruling-that testimony of government's immunized witness would be suppressed unless two defense witnesses were also immunized; stating that "it would be an exercise in pure formalism to hold that the district court's order is not appealable").

**8.** Numerous witnesses at the legislative hearings testified to this fact. *See e.g.,* the testimony at the *Hearings on Tex. S.B. 762 Before the Senate Comm. On Crim. Just.,* 70th Leg., R.S. (Apr. 21, 1987; "9:30 a.m." tape)(Rusty Hardin: "This is modeled after the model statute and the federal statute with a couple of minor changes"; Alan Levy: "I would point out to the committee that this legislation is fairly consistent with legislation throughout the United States ... This isn't a novel or unusual concept we are talking about"; Chris Marshall: "This ... basically follows the federal statute"; Knox Fitzpatrick: "This pretty much follows the acts that are in existence in the 49 other states and the federal act and the model act.").

Harris County Assistant District Attorney Rusty Hardin's testimony in favor of Senate Bill 762, before the Senate Committee on Criminal Justice made clear that the bill was intended to encompass more than motions to suppress illegally obtained evidence. Mr. Hardin illustrated the purpose of Senate Bill

5(a)(5), mimics "the clarifying nomenclature of the Wisconsin statute,"[9] which permits appeals from orders "suppressing evidence."[10] The Wisconsin Supreme Court has interpreted its statute as allowing the State to appeal *any* pretrial order barring admission of evidence which would normally be outcome determinative.[11]

All fifty states, as well as the District of Columbia, have provisions permitting the government to appeal adverse rulings of a question of law.[12] Many of those states

762 by discussing a case in which a capital murder charge was dismissed because of what the State thought was an erroneous trial court ruling. The pretrial evidentiary ruling described did not relate to evidence that was in any way "illegally obtained" but to former testimony:

Mr. Hardin: Most recently in Houston, a capital murder case had to be dismissed because of what we believe and I think what most lawyers believe was a clearly erroneous trial court ruling but it couldn't be appealed because it was pretrial. . . . In the Houston case—the ruling was that a transcript—that was a celebrated capital case in which the co-defendant, a woman, had received a life sentence and this time on a reversal did not want to testify against the defendant who was charged again—being tried again for the death penalty. The State wanted to use her testimony from the last trial. There was a long hearing about whether it would be allowed and the trial judge ultimately found . . .

Senator Lyon: Was she married to the . . .

Mr. Hardin: She was his girlfriend, and it was a contract killing and the State wanted to use her testimony from the first trial which had been used to convict him since she would no longer testify. The trial judge, pretrial, says "no, you can't do it."

Senator Lyon: How could she testify if she was . . .

Mr. Hardin: Well, she was serving a life sentence. We just had no way to compel her, I mean, she could have been found in contempt but it was a problem with no remedy. In other words, she was willing to continue in the Texas Department of Corrections. She's still there. So there was just no way to force her, no practical way. But the effect was . . . as a result of not having that evidence the case had to be dismissed, in a very brutal killing.

*Hearings on Tex. S.B. 762 Before the Senate Comm. On Crim. Just.*, 70th Leg., R.S. (Apr. 21, 1987; "9:30 a.m." tape). Mr. Hardin went on to describe the State's right generally:

It is important to note that these are simply rulings that occur pretrial with one or two exceptions. These do not have anything to do with appealing a "not guilty" verdict or any factual findings of a trial judge. . . . Basically, it gives the State one-half the right to appeal. If a judge makes a *ruling of law* prior to trial then, against the State, the State could take that up pretrial.
*Id.* (emphasis added).

9. Cathleen C. Herasimchuk, *Criminal Justice and the State's Right to Appeal*, 24 Hou. Law. (Jan.-Feb.1987). This article, published before the 1987 Legislature met and enacted art. 44.01, contained the "proposed legislation," along with an explanation of the proposed statutory terms, an historical analysis of the State's right to appeal in other jurisdictions, and arguments both for and against enacting a State's right to appeal in Texas.

10. WIS.CODE CRIM. PROC. § 974.05(1)(d)(2).

11. In *State v. Eichman*, 155 Wis.2d 552, 456 N.W.2d 143 (1990), the Wisconsin Supreme Court agreed that there is a distinction between "suppressing" evidence and "excluding" evidence, as the former generally bars admission of evidence at trial as a result of governmental misconduct, such as a constitutional violation, and the latter generally involves only a violation of the rules of evidence, but disagreed that the distinction between suppressing evidence and excluding evidence prohibits the State from appealing such pretrial rulings. 456 N.W.2d at 147. *See also State v. Mendoza*, 96 Wis.2d 106, 291 N.W.2d 478, 483 (1980)(the use of the word evidence in § 974.05(1)(d)(2) "means something which is legally submitted to a competent tribunal as a means of ascertaining the truth of any relevant fact").

12. *See* ARK.CRIM. P.R. 15.7 (state may appeal order suppressing a confession or admission or other evidence); ALASKA STAT. 22.07.020 (state may appeal any order limited only by double jeopardy); ARIZ.REV.STAT. 13–4032

use the same or very similar language as that contained in art. 44.01(a)(5), and they

(state may appeal order granting a motion to suppress use of testimony); ARK. R.A.P.CRIM. 3 (state may appeal order which grants motion to suppress seized evidence, confessions, or allows evidence of victim's prior sexual conduct); CAL. PEN.CODE § 1238 (state may appeal order suppressing property or evidence if case is dismissed); COLO.REV.STAT. 16-12-102 (state may appeal motion to suppress evidence, extrajudicial confession or admission); CONN. GEN.STAT. 54-96 (state may appeal rulings upon all questions of law upon permission); 10 DEL.CODE ANN. 9902 (state may appeal any order suppressing or excluding substantial and material evidence "essential to the case"); D.C.CODE ANN. 23-104 (state may appeal an order which suppresses evidence or otherwise denies the prosecutor the use of evidence); FLA. STAT. 924.07 & 924.071 (state may appeal an order or ruling suppressing evidence or evidence in limine at trial); GA. CODE ANN. 5-7-1 (state may appeal order excluding evidence illegally seized or alcohol/drug test results); HAW.REV.STAT. 641-13 (state may appeal ordering granting a motion for suppression of evidence, including a confession or admission); IDAHO A.R. 11 (state may appeal order granting motion to suppress); ILL. S.CT. R. 604 (state may appeal order suppressing evidence); IND.CODE ANN. 35-38-4-2 (state may appeal an order granting a motion to suppress evidence if ultimate effect is to preclude further prosecution); IOWA CODE 814.5 (state may appeal order suppressing or admitting evidence); KAN. STAT. ANN. 22-3603 (state may appeal order suppressing evidence, a confession or admission); KY.REV.STAT. 22A.020 (state may appeal adverse decision or ruling); LA. C.CRIM. P. art. 912 (state may appeal adverse judgments or rulings); ME.REV.STAT. 2115-A (state may appeal order suppressing evidence, including, but not limited to, physical or identification evidence or evidence of a confession or admission); MD.CODE ANN. 12-302 (state may appeal decision that excludes evidence offered by the state alleged to have been seized in violation of constitution); MASS. ANN. LAWS ch. 278, 28E (state may appeal motion to suppress evidence); MICH. COMP. LAWS 770.12 (state may appeal order appealable by law or rule, including decision concerning admission of evidence); MINN. R.CRIM. PROC. 28.04 (state may appeal any pretrial order of court); MISS. CODE ANN. 99-35-103 (state may file post-trial appeal on any question of law; no retrial permitted); MO.REV.STAT. 547.200 (state may appeal order suppressing evidence or a confession or admission); MONT.CODE ANN. 46-20-103 (state may appeal order suppressing evidence or a confession or admission); NEB.REV. STAT. 29-824 (state may appeal order granting a motion to suppress evidence); NEV.REV.STAT. ANN. 177.015 (state may appeal order granting or denying a motion to suppress); N.H.REV. STAT. ANN. 606:10 (state may appeal order suppressing any evidence); N.J. COURT RULE 2:3-1 (state may appeal in accordance with search warrants; interlocutory appeals); N.M. STAT. ANN 39-3-3 (state may appeal order suppressing or excluding evidence); N.Y. CPL 450.20 (state may appeal an order suppressing evidence); N.C. GEN.STAT. 15A-1445 (state may appeal an order suppressing evidence); N.D. CENT.CODE 29-28-07 (state may appeal order suppressing evidence, confession, or admission); OHIO REV.CODE 2945.67 & Crim. R. 12 (state may appeal order granting motion to suppress evidence, including statements and identification testimony on ground it was illegally obtained); 22 OKLA. STAT. 1089.1 (state may appeal adverse ruling or order granting motion to suppress evidence); OR.REV.STAT. 138.060 (state may appeal order suppressing evidence); PA. R.A.P. 311 (state may appeal order that will terminate or substantially handicap prosecution); R.I. GEN LAWS 9-24-32 (state may appeal any finding, ruling decision or order pretrial); S.C.CODE ANN. 14-3-330 (state may appeal order affecting a substantial right when order determines action); S.D. COD. LAWS 23A-32-5@ (state may appeal order suppressing or excluding evidence); TENN.APP. PROC. R. 3, 9, 10 (state may appeal orders if lower court has departed from the law, or if necessary); UTAH CODE ANN. 77-18a-1 (state may appeal order granting motion to suppress when court determines appeal is in interest of justice); 13 VT. STAT. ANN. § 7403 (state may appeal motion to suppress evidence); VA.CODE ANN. § 19.2-398 (state may appeal order excluding evidence obtained in violation of specified constitutional provisions); WASH. R.A.P. 2.2 (state may appeal pretrial motion suppressing evidence if practical effect is to terminate action); W.VA. CODE § 58-5-30 (state may not appeal a motion to suppress evidence, although it may appeal dismissal of indictment); WISC. STAT. § 974.05 (state may appeal motion to suppress evidence, confession, or admission); WYO. STAT. § 7-12-102 (state may challenge

permit the State to appeal *any* pretrial ruling suppressing evidence if that evidence is likely to be outcome determinative.[13] Other states explicitly grant the prosecution a broad right to appeal any pretrial suppression, evidentiary or other legal ruling which is likely to determine the outcome of the case.[14] A few states explicitly permit the State to appeal only orders excluding "seized evidence," "evidence illegally obtained," or "evidence seized in violation of the Constitution."[15] A handful of state courts have construed their government-appeal statutes to permit only appeals of constitutionally-based pretrial rulings excluding evidence.[16] At least one state, Ohio, has judicially broadened its government-appeal statute to permit pretrial appeals of nonconstitutional trial rulings excluding evidence, despite language to the contrary.[17] Although a few states apply their government-appeal statutes narrowly, the vast majority of courts and legislatures across the nation broadly construe their state's-right-to-appeal statutes. They focus upon the same major themes: 1) Does this pretrial ruling effec-

tively prevent the government from presenting its case to a jury? And 2) Is the ruling based upon an erroneous interpretation or application of law?

In *Roberts*, this Court followed that handful of states which have very narrowly construed their state's right-to-appeal statutes. This Court ruled that it lacked jurisdiction to consider a State's appeal from a trial court's ruling that civil deposition testimony was inadmissible. 940 S.W.2d at 660. We held that the phrase "motion to suppress evidence," as used in article 44.01(a)(5), was limited to motions which sought to suppress evidence on the basis that such evidence was "illegally obtained." The defendant in *Roberts* contended that a videotaped deposition from a civil case was inadmissible hearsay; he did not claim that the deposition testimony was illegally obtained. Because the defendant's motion was not a "motion to suppress evidence" contemplated under art. 44.01(a)(5), went the logic, the order granting the motion was not appealable. *Roberts*, 940 S.W.2d. at 660.[18]

---

ruling suppression of evidence with bill of exceptions and writ of certiorari).

**13.** These states include: Alabama, Arizona, Colorado, Delaware, Florida, Illinois, Kansas, Maine, Massachusetts, New Hampshire, New York, North Carolina, Oregon, South Dakota, Utah, Vermont, Washington, and Wisconsin.

**14.** These states include: Alaska, Connecticut, the District of Columbia, Kentucky, Louisiana, Michigan, Minnesota, New Jersey, New Mexico, Pennsylvania, Rhode Island, South Carolina, and Tennessee.

**15.** These states include: Arkansas, Georgia, and Maryland. Hawaii permits the pretrial state appeal of a motion to suppress based upon the violation of any statute or administrative rule as well as constitutional violations. In Indiana, the defendant may only bring a pretrial "motion to suppress illegally obtained evidence," and the state may appeal any adverse ruling of the defendant's motion.

**16.** These states include: Missouri, Montana, Nevada, and North Dakota. These states, like Texas, have statutory provisions which permit an appeal from a "motion to suppress evidence," but the courts have construed that language narrowly. *See, e.g., State v. Holzschuh*, 670 S.W.2d 184 (Mo.App.1984); *State v. Shade*, 110 Nev. 57, 867 P.2d 393 (1994) (dismissing appeal on basis that BLACK'S LAW DICTIONARY defines a motion to suppress as a motion to exclude evidence secured illegally, in violation of 4th, 5th or 6th amendments); *State v. Strizich*, 286 Mont. 1, 952 P.2d 1365 (1997) (following *Holzschuh*); *State v. Counts*, 472 N.W.2d 756 (N.D.1991).

**17.** O.R.C. § 2945.67; Ohio Crim. R. 12.

**18.** Of course, if the defendant's motion to suppress was not really a "motion to suppress evidence" for purposes of article 44.01, it was equally not a "motion to suppress evidence" for purposes of being considered at a pretrial hearing under article 28.01.

In arriving at its conclusion in *Roberts*, this Court stated that the phrase "motion to suppress" was ambiguous, and so looked to extratextual factors to interpret the statute. We focused primarily upon the "technical" definition of "motion to suppress" in BLACK'S LAW DICTIONARY:

> Motion to suppress. A device used to eliminate from the trial of a criminal case *evidence which has been secured illegally*, generally in violation of the Fourth amendment (search and seizure), the Fifth Amendment (privilege against self-incrimination), or the Sixth Amendment (right to assistance of counsel, right of confrontation, etc.) of the U.S. Constitution.

*Roberts*, 940 S.W.2d at 658–59 (emphasis in original) (quoting BLACK'S LAW DICTIONARY (6th ed.1989)).

The Court in *Roberts* also relied on the fact that the corresponding federal statute authorizes an appeal by the Government, under 18 U.S.C.A. § 3731, "from a decision or order of a district court suppressing or excluding evidence . . . ." Texas article 44.01(a)(5) authorizes an appeal from a motion to suppress evidence, but it does not explicitly authorize an appeal from a motion to *exclude* evidence. In *Roberts*, this Court reasoned:

> [B]y using the term 'suppress' alone, not in conjunction with the broader term 'exclude,' the Legislature meant to limit the State's appeal to those instances where evidence is suppressed in the technical sense, not merely excluded.

940 S.W.2d at 659. The legislative history of article 44.01 shows otherwise. The legislative intent, explicitly stated in the Bill Analysis, was to permit the State to appeal any "questionable legal rulings excluding what may be legally admissible evidence." Period.

■ When construing arguably ambiguous statutes, courts normally look to the object sought to be obtained, legislative history, and the prior statutory use of a term, as well as other criteria, including dictionary definitions.[19] The legislative history of article 44.01, as noted above, demonstrates that the Texas legislature intended to follow the liberal federal interpretation of the government's right to appeal pretrial evidentiary rulings, as well as that of the vast majority of other states. Furthermore, the Texas Legislature was already familiar with the use of the term "motion to suppress evidence" in the context of pretrial hearings.

The Texas Legislature apparently chose the term "motion to suppress evidence" in article 44.01(a)(5) because pretrial "motions to suppress evidence" can be heard under article 28.01. Article 28.01 outlines the types of motions and pleadings that may be brought pretrial. It states that:

> The pretrial hearing shall be to determine any of the following matters:
>
> (6) Motions to suppress evidence— When a hearing on the motion to suppress evidence is granted, the court may determine the merits of said motion on

---

**19.** *See* TEX. GOV'T CODE, § 311.023; *see also Lane v. State*, 933 S.W.2d 504, 514 (Tex.Crim. App.1996). In *Lane*, this Court set out a non-exclusive list of factors which courts should use to construe an ambiguous statute. These factors include those explicitly set out in the Government Code provision:

1. object sought to be attained;
2. circumstances under which the statute was enacted;
3. legislative history;
4. common law or former statutory provisions, including laws on the same or similar subjects;
5. consequences of a particular construction;
6. administrative construction of the statute; and
7. title (caption), preamble, and emergency provision.

the motions themselves, or upon opposing affidavits, or upon oral testimony, subject to the discretion of the court[.]

Tex.Code.Crim. Proc. Art. 28.01. Because the only type of pretrial evidentiary motion mentioned in article 28.01 is a "motion to suppress evidence," it follows that the only type of pretrial evidentiary motion that the State can appeal is the same type that the defendant may file. They are both called a "motion to suppress evidence."

 Under article 28.01, a motion to suppress evidence is one in which the defendant (or the State) claims that certain evidence should not be admitted at trial for a constitutional, statutory, evidentiary or procedural reason. There is no logical, legal, or linguistic reason that a single phrase concerning the same pretrial evidentiary motion, should bear one meaning for purposes of which pretrial motions a court may consider, but bear a totally different meaning when the State appeals an adverse ruling on that motion.[20] The rule is simple: If the trial court can rule upon a pretrial motion to suppress evidence, the State can appeal it.[21] A motion for the goose is a motion for the gander.

The conclusion in *Roberts* is inconsistent with Texas law concerning pretrial motions which, under article 28.01, § 1(6), do not distinguish between a "motion to suppress evidence" and a "motion to exclude evidence." There was no reason for the Texas legislature to include "motion to exclude" in article 44.01 because it is not found in article 28.01, either. There is no such statutory term in Texas law as a pretrial "motion to exclude," either for the defendant to file or for the State to appeal.

Finally, the rule in *Roberts* is, as this case demonstrates, unworkable. Who decides whether a pretrial motion to suppress evidence is one that seeks to exclude "illegally obtained" evidence? If the defendant labels his motion as one to suppress illegally obtained evidence, is that determinative? If the defendant cites constitutional provisions, is that determinative? If the trial court, in ruling, cites constitutional provisions, is that determinative? Or, as in this case, if the court of appeals determines that, even though both the defendant and trial judge cited constitutional provisions, the motion (and ruling) was not really a motion to suppress illegally obtained evidence? This is a linguistic puzzle that only Humpty Dumpty or a rejection of *Roberts* can resolve.

### III.

This Court does not lightly overrule precedent. As we stated in *Paulson v. State*, 28 S.W.3d 570 (Tex.Crim.App.2000):

> We follow the doctrine of *stare decisis* to promote judicial efficiency and consistency, encourage reliance on judicial decisions, and contribute to the integrity of the judicial process. But if we conclude that one of our previous decisions was poorly reasoned or is unworkable, we do

---

**20.** One is reminded of Alice in Wonderland: "When I use a word," Humpty Dumpty said, in a rather scornful tone, "it means just what I choose it to mean—neither more nor less." "The question is," said Alice, "whether you can make words mean so many different things." "The question is," said Humpty Dumpty, "which is to be master—that's all." Lewis Carroll, *Alice's Adventures in Wonderland*, ch. 6 (1865). When the Legislature

chose to use the same phrase, "motion to suppress evidence," in both the statute dealing with pretrial motions and the statute dealing with pretrial appeals of pretrial motions, one would normally conclude that this phrase had the same meaning in both statutes.

**21.** That is, as long as the State fulfills the other requirements of art. 44.01(a)(5).

not achieve these goals by continuing to follow it.

*Id.* at 571 (footnotes omitted).

As discussed above, the judicial limitation upon the state's right to appeal established in *Roberts* was flawed from the outset, has proven unworkable, and creates inconsistency and confusion in the law. Moreover, overruling *Roberts* would not disrupt judicial efficiency and consistency, or detract from the integrity of the judicial process and the reasonable reliance of litigants. It is hard to conclude that litigants or judges have relied upon the holding in *Roberts* in drafting, filing, hearing, or ruling upon pretrial motions to suppress evidence. But if litigants or judges *have* relied upon *Roberts* and drafted or ruled on pretrial motions to suppress carefully omitting any "illegally obtained" language because of their expectation that those motions and rulings are thereby insulated from appellate review, that reliance flies in the face of the explicit legislative history and purpose of article 44.01 as set out above. Article 44.01 was enacted to ensure that erroneous pretrial legal rulings would *not* be insulated from appellate review.

■ On occasion, we have said that "[w]hen the Legislature meets, after a particular statute has been judicially construed without changing the statute, we presume the Legislature intended the same construction should continue to be applied to that statute." [22] This and similar statements originate from early Texas and common law cases which had stated that: "[w]hen an act or part thereof which has received a judicial interpretation is *reenacted* in the same terms, or where words used in a statute have a definite and well known meaning in law, that construction or that meaning must be considered to have the sanction of the Legislature unless the contrary appears." [23] Certainly when a legislature *reenacts* a law using the same terms that have been judicially construed in a particular manner, one may reasonably infer that the legislature approved of the judicial interpretation. There is considerably less force (though still some) to the argument that if a legislature does not agree with the judicial interpretation of the words or meaning of a statute, the legislature would surely have immediately changed the statute. As Judge Dally noted in his concurring opinion in *Shivers v. State*: [24]

the legislative silence toward the rules stated in [a prior case] should not be interpreted as legislative acceptance of that decision. In *Helvering v. Hallock*, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604 (1940), it is stated that "It would require very persuasive circumstances enveloping Congressional silence to debar this Court from re-examining its own doctrines." In *Girouard v. United States*, 328 U.S. 61, 66 S.Ct. 826, 90 L.Ed. 1084 (1946), it was stated that "It is at best treacherous to find in Congressional silence alone the adoption of a controlling rule of law. We do not think under the circumstances of this legislative history that we can properly place on the shoulders of Congress the burden of the Court's own error." *See also Boys Markets, Inc. v. Retail Clerks Union, Local*

**22.** *Marin v. State*, 891 S.W.2d 267, 271–272 (Tex.Crim.App.1994); *State v. Hardy*, 963 S.W.2d 516, 523 (Tex.Crim.App.1997).

**23.** *Lewis v. State*, 58 Tex.Crim. 351, 362, 127 S.W. 808, 812 (1910) (emphasis added) (collecting English and American cases).

**24.** 574 S.W.2d 147, 150 (Tex.Crim.App.1978)(Dally, J., concurring).

*770,* 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). Therefore, in the absence of any persuasive circumstances evidencing a clear design that legislative inaction be taken as acceptance of [a prior case], the mere silence of the Legislature is not a sufficient reason for refusing to reconsider that decision. *Boys Markets, Inc. v. Retail Clerks Union, Local 770, supra.*

▪ Thus, while this Court should consider the fact that the legislature did not immediately amend article 44.01(a)(5) in reaction to the *Roberts* decision, legislative inaction does not necessarily equate to legislative approval. The Legislature is not required to repair our error, nor are we forbidden to do so ourselves. Given the explicit legislative purpose announced in the written Bill Analysis and throughout the oral hearings on the 1987 state's-right-to-appeal bill, the fact that this extensive legislative history was never consulted or discussed in *Roberts,* and the longstanding and definite meaning of the term "motion to suppress evidence" used in both arts. 28.01 and 44.01, we conclude that the Legislature adequately expressed its intent at the time in originally enacted article 44.01. It did not need to re-iterate that intent by amending the statute after *Roberts.*

▪ We therefore, overrule *Roberts* because article 44.01(a)(5) is not limited solely to pretrial rulings that suppress "illegally obtained" evidence. The State may appeal an adverse ruling on *any* pretrial motion to suppress evidence as long as the other requirements of the statute are met.

## IV.

▪ The trial court's ruling in this case does not involve evidence which would nor-

mally be considered "illegally obtained." Still, the ruling excluding Jennifer's identification testimony—which was a legal ruling excluding evidence-is appealable under article 44.01(a)(5) if it could be determined pretrial under article 28.01, § 1(6). Relying on the standards concerning the admissibility of post-hypnotic testimony set out in *Zani v. State,* 758 S.W.2d 233 (Tex. Crim.App.1988),[25] the trial court orally ruled that Jennifer's identification of Mr. Medrano was inadmissible. After hearing arguments from the prosecutor, the trial court affirmed her oral order with a written ruling that specifically held that the identifications were obtained in violation of the United States and Texas Constitutions. The trial court's written ruling falls squarely within the rulings intended to be appealable under Article 44.01.

Therefore, we vacate the decision by the court of appeals which held that it had no jurisdiction to hear the State's appeal and remand to that court to determine the merits of this appeal.

JOHNSON, J., filed a concurring opinion.

WOMACK, J., joined by PRICE, J., filed a dissenting opinion.

MEYERS, J., not participating.

JOHNSON, J., filed a concurring opinion.

I concur only in the decision to remand.

After a brief statement explaining the meaning and purpose of Art. 44.01(a), the majority opinion sets out an interpretation of the legislative intent behind the statute and continues into a detailed analysis of what similar federal statutes and statutes from other states say and how those states

---

**25.** In *Zani,* as in this case, the defendant filed a pretrial "motion to suppress evidence" under article 28.01, § 1(6). In that case, as in this one, the trial court heard and ruled upon the motion based upon both constitutional and evidentiary considerations.

have chosen to interpret their own statutes. As Judge Womack notes, the basis for the majority's understanding of legislative intent leans heavily on the testimony of non-legislator witnesses. This Court does not have the authority to delve into the legislative history of statute or to interpret what the statute means without first finding that the plain language of the statute is ambiguous or that the "plain language would lead to absurd consequences that the Legislature could not *possibly* have intended . . . ." *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Crim.App.1991)(emphasis in original). This the majority does not do.

In addition, the majority's rationale for overruling *State v. Roberts*, 940 S.W.2d 655 (Tex.Crim.App.1996) distorts this Court's precedent and authority. There are several problems with the majority's analysis. First, long-standing case law says explicitly that if the legislature does not amend a statute after it has been judicially construed, we assume that the legislature approved the judicial construction. *State v. Hardy*, 963 S.W.2d 516, 523 (Tex.Crim. App.1997); *Marin v. State*, 891 S.W.2d 267, 271–272 (Tex.Crim.App.1994). Contrary to that long-established precedent, the majority contends that "legislative inaction does not necessarily equate to legislative approval." Whether or not that is true, the assertion is made without reference to any authority. Second, not only did the legislature not "immediately amend" article 44.01(a)(5) in response to *Roberts*, it has not, to this day, made any changes in it. Third, if this Court can overrule precedent simply by saying that it can, what has become of *stare decisis?* Are we now to decide issues without even considering the collected wisdom of the past? Finally, how are we to know when legislative inaction following a judicial interpretation of a statute is agreement with the interpretation and when it is the legis-

lature sitting back and waiting for this Court to recognize that it has made an error and remedy that error on its own?

The majority also leaves questions unanswered. For example, it refers three times to the "many" states which allow state appeals of pretrial orders suppressing evidence which are "outcome determinative," ante at 897–99, but does not speak to what should be done if the order is not "outcome determinative." Are the rules the same? If not, how are they different?

While the question of whether *Roberts* should be overruled may a valid one, in my estimation the deficiencies in the legal analysis of the majority prevent its opinion from giving a satisfactory answer.

WOMACK, J., filed a dissenting opinion in which PRICE, J., joined.

I believe that the Court both overstates and understates the requirements of *stare decisis* in this case. A quick review of the basics is in order:

> Stare decisis is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process. Adhering to precedent "is usually the wise policy, because in most matters it is more important that the applicable rule of law be settled than it be settled right." Nevertheless, when governing decisions are unworkable or are badly reasoned, "this Court has never felt constrained to follow precedent." Stare decisis is not an inexorable command; rather, it "is a principle of policy and not a mechanical formula of adherence to the latest decision." This is particularly true in constitutional cases, because in such cases "correction through legislative action is practically

impossible." Considerations in favor of stare decisis are at their acme in cases involving property and contract rights, where reliance interests are involved; the opposite is true in cases such as the present one involving procedural and evidentiary rules.[1]

Because this Court usually fails to differentiate the kinds of law that are before it, it usually overstates the role of *stare decisis* by parroting platitudes from dissimilar cases. As the preceding paragraph makes clear, cases of criminal procedure are not like cases of substantive law. And this Court makes no substantive law; it has only a limited role in making procedural and evidentiary law through its opinions.

I say that this Court does not make substantive criminal law because there is *no common law of crimes in Texas.*

While other States may imply duties or derive them from the common law, under the laws of this State notice of an offense must invariably rest on a specific statute. This notion is firmly rooted in the evolution of Texas criminal jurisprudence. Since the days of the Republic and early statehood, Texas courts have been prohibited from allowing common law duties to form the basis of criminal sanctions. *See, e.g., Republic v. Bynam,* Dallam 376 (1840) (Texas statutes intolerant of constructive offenses and constructive punishments); *Cain v. State,* 20 Tex. 355 (1857) (prosecution is prohibited for what was an offense at common law, but not made penal by our statutes). That longstanding prohibition is specifically embodied in our Penal Code, which provides that "conduct does not constitute an offense unless it is defined as an offense by statute, municipal ordinance, order of a county commissioners court, or rule authorized by and lawfully adopted under a statute." Penal Code, § 1.03(a).[2]

The power to create and define offenses which rests within the sound discretion of the legislative branch of government, necessarily includes the power to establish and define the defenses.[3] When a statutory defense applies to the facts of a criminal case, a non-statutory defense is not available.[4]

Furthermore, because the authority to establish what constitutes a defense rests solely with the Legislature, this Court concludes a defense which is not recognized by the Legislature as either a defense or as an affirmative defense does not warrant a separate instruction. The term defense should not be used for an issue that has not been specifically labeled as such by the Legislature.[5]

Therefore this Court cannot create, much less alter, a common law of criminal offenses or defenses.

The common-law jurisprudence of this Court is limited to evidentiary and procedural matters—and not much of that. "As a general matter, ... Texas criminal procedure has been characterized by legislative control over substance."[6] This includes a number of statutory rules of

---

1. *Payne v. Tennessee,* 501 U.S. 808, 827–28, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991) (citations omitted).

2. *Billingslea v. State,* 780 S.W.2d 271, 275 (Tex.Cr.App.1989).

3. *Willis v. State,* 790 S.W.2d 307, 314 (Tex.Cr.App.1990).

4. *See id.* at 315.

5. *Giesberg v. State,* 984 S.W.2d 245, 250 (Tex.Cr.App.1998).

6. GEORGE E. DIX & ROBERT O. DAWSON, 40 TEXAS PRACTICE—CRIMINAL PRACTICE AND PROCEDURE § 0.01 (2d ed.2001).

evidence, while most of the rest of our evidence law is codified in our Rules of Evidence. Most of our cases call on us to construe and apply the provisions of constitutions and statutes and rules. Today's case is such a one.

The general principles of *stare decisis* for "rules of law" that the Court considers [7] have little, if anything, to do with this case because we have not made a rule of law. We have only construed the rule the legislature made.

When it comes to construction of criminal-procedure statutes, the demands of *stare decisis* may be even lower than in cases of court-made procedure because the legislature sometimes can correct a wrong decision. This is why we often attach importance to the legislature's failure to amend a statute that we have construed. The notion is that we must have got it right, since the legislature could easily have acted if we got it wrong.

The Court points out that legislative inaction does not necessarily equal legislative approval.[8] No one could argue the opposite, that is, that legislative action necessarily equals legislative approval. A court must examine the statute, the judicial construction, and the legislative response.

The Court relies on a concurring opinion that quotes two opinions of the United States Supreme Court.[9] If one reads those opinions, rather than the three sentences that are quoted, one can get an idea of the factors that can be considered.

In *Helvering v. Hallock*,[10] the Supreme Court did not renounce its prior construction of a statute as we do today. The problem was not with the first construction; it was with two later opinions that were contrary to the principle of the first. The Court adhered to the construction it had first made, and rejected the argument that Congress had tacitly approved the two later cases.

> Our problem then is not that of rejecting a settled statutory construction. The real problem is whether a principle shall prevail over its later misapplications. Surely we are not bound by reason or by the considerations that underlie stare decisis to persevere in distinctions taken in the application of a statute which, on further examination, appear consonant neither with the purposes of the statute nor with this Court's own conception of it. We therefore reject as untenable the diversities taken in the [two later] cases in applying the [earlier case's] doctrine—untenable because they drastically eat into the principle which those cases professed to accept and to which we adhere.[11]

In terms of the present statute, the analogous situation would be that after our *Roberts* decision we had held that the statute did not authorize the State to appeal an order suppressing contraband because contraband is not evidence. Legislative inaction would not prevent us from overruling the later holding and returning to our original construction.

The other case from which the majority quotes is *Girouard v. United States*,[12] in

---

**7.** *See ante* at 901.

**8.** *Ante* at 903.

**9.** *See ibid.*

**10.** 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604 (1940).

**11.** *Id.* at 122, 60 S.Ct. 444.

**12.** 328 U.S. 61, 66 S.Ct. 826, 90 L.Ed. 1084 (1946).

which the Court overruled three prior decisions that the oath of citizenship required the immigrant to agree to bear arms for the United States. The statute contained no such language. Bills to overrule those decisions had been introduced in Congress but never reported out of committee. The Court declined to attach importance to the statute's not being amended because the case could be resolved by reference to an action that Congress had taken later.

> But for us, it is enough to say that since the date of those cases Congress never acted affirmatively on this question but once and that was in 1942. At that time, as we have noted, Congress specifically granted naturalization privileges to non-combatants who like petitioner were prevented from bearing arms by their religious scruples. That was affirmative recognition that one could be attached to the principles of our government and could support and defend it even though his religious convictions prevented him from bearing arms. And, as we have said, we cannot believe that the oath was designed to exact something more from one person than from another. Thus the affirmative action taken by Congress in 1942 negatives any inference that otherwise might be drawn from its silence when it reenacted the oath in 1940.[13]

There is no ready analogy for the present statute because the decision that the Supreme Court overruled had added a requirement to the statutory language, while our *Roberts* decision declined to add "or excluding" to the statute. The point is that the Supreme Court opinion from which the majority extracts a quote today was decided on the basis of subsequent legislative action, not inaction. It is not helpful for deciding the case before us now.

To my mind, the evaluation of legislative silence should take into account whether the judicial construction increased or decreased the scope of the statute, and the difficulty of a legislative correction. A construction that decreased the scope of a statute is more defensible than one that increased its scope, for the same reason that remittitur is more defensible than additur; that is, the verdict or statute that is under review carries approval of every lesser component that is included in the "face value," but there has been no such approval of any greater value. And if the statute could easily be set right by clarifying language, the legislative choice not to do so has more significance for me.

In 1996 we held that Code of Criminal Procedure article 44.01's authorizing an interlocutory appeal by the State from a ruling that grants a "motion to suppress" evidence does not extend to all rulings that exclude evidence. We said that "suppressing" evidence connoted a ruling that the evidence was illegally obtained, while "excluding" evidence connoted a ruling that the evidence was inadmissible for other reasons.[14]

Today the Court says this holding was wrong because the legislature "modeled art. 44.01 after the corresponding federal provision generally,"[15] a statute that permits an appeal by the government from suppression or exclusion of evidence. I want to point out four things. First, drafting a statute to apply only to "suppressing" is an odd way of modeling on the federal statute that specifies both "sup-

---

13. *Id.* at 70, 66 S.Ct. 826.

14. *See State v. Roberts,* 940 S.W.2d 655 (Tex. Cr.App.1996).

15. *Ante* at 896.

pressing" and "excluding." [16] Second, our 1996 decision was based on the language of the statute, which is more important than the intentions and interpretations of witnesses who supported the act, which are the primary support for today's decision. "It is the *law* that governs, not the intent of the lawgiver," [17] much less the intent of the lawgiver's committee witnesses. But this is only to rehash the 1996 decision of the Court.

In 2002 the more important points are my third and fourth: Today's construction of the ambiguous word increases the scope of the statute, applying it to "excluding" evidence as well as to "suppressing" it. And if that is the correct scope of the statute, the legislature had but to amend the statute by inserting the words "or excluding." Three sessions of the legislature have intervened since our decision, with no action. In this case, that is significant.

If this case were the opposite (if the statute had read "suppressing or excluding evidence," and we had held that it did not apply to the excluding of evidence) legislative inaction might mean little or nothing. What could the legislature do to express more clearly that the statute applied to the excluding of evidence? But when the statute says it applies only to "suppressing" evidence and this Court held that "sup-

pressing" does not mean every "excluding" of evidence, the remedy is quick and easy.

If we have misconstrued a statute that is stated clearly, what can the legislature do? Reenact the statute with the additional phrase, "and we really mean it"? When we have misconstrued a criminal-procedure statute that is unambiguous, *stare decisis* has its least force. In such a case we should be more free to overrule our earlier decision. A recent example was our reconsideration of the statute that limited appeals from negotiated pleas of guilty. The statute said that before a defendant in such a case could appeal, "he must have permission of the trial court, except on those matters which have been raised by written motion filed prior to trial." [18] In 1996 we held that defendants in such cases who neither had permission of the trial court nor were appealing matters raised by written pre-trial motions, could appeal the voluntariness of their pleas.[19] Our addition of this third class of appeals was contrary to the clear language of the statute. The legislature would have been hard pressed to amend the statute to make it more clear than it was, since it already said that only two classes of plea-bargained convictions could be appealed. I agreed with the Court that in such a case, *stare decisis* notwithstanding, the decision would no longer be followed.[20]

**16.** "An appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information . . . ." 18 U.S.C. § 3731.

**17.** ANTONIN SCALIA, A MATTER OF INTERPRETATION 17 (1997).

**18.** Act of June 10, 1977, 65th Leg., R.S., ch. 351, § 1, 1977 Tex. Gen. Laws 940, *repealed*

*in part by* Act of June 14, 1985, 69th Leg., R.S., ch. 685, §§ 1 & 4, 1985 Tex. Gen. Laws 2472 (authorizing Court of Criminal Appeals to promulgate rules of procedure and conditionally repealing articles of the Code of Criminal Procedure), *replaced by* TEX. R. APP. P. 25.2(b).

**19.** *Flowers v. State,* 935 S.W.2d 131 (Tex.Cr. App.1996).

**20.** *See Cooper v. State,* 45 S.W.3d 77 (Tex.Cr. App.2001).

If we were considering the meaning of Article 44.01(a)(5) for the first time, I might hold that the statute means what the Court says today. But to do so after the legislature has failed three times to "correct" our construction is contrary, not so much to the rule of *stare decisis* as to the Division of Powers Article of the Constitution.[21] Are we not effectively amending this statute to read as its federal counterpart reads, when the Legislature that enacted it did not do so and three successive Legislatures have chosen not to do so? I do not think this action is compelled by the language of the statute, and I would not undertake it.

The Court's other argument that "suppress evidence" means "suppress or exclude evidence" is by reference to Code of Criminal Procedure article 28.01, which provides the procedure for a pretrial hearing like the one that was held in this case. Section 1 of the article says, "The pretrial hearing shall be to determine any of the [eleven] following matters: ... (6) Motions to suppress evidence." The Court reasons thus: pretrial hearings are to determine motions to suppress evidence; the motion that was filed in this case was decided at a pretrial hearing; therefore it must have been a motion to suppress evidence.[22]

If the Court's argument were valid, there would be an equally valid argument that would rely on *Roberts* rather than overruling it: Pretrial hearings are to determine motions to suppress evidence; this was a motion to exclude evidence, not to suppress evidence (*State v. Roberts*); therefore the trial court erred to decide the motion at a pretrial hearing.

Neither argument is valid, because the first premise is insufficient to justify the conclusion. Although pretrial hearings are for motions to suppress evidence (and the other matters that are listed in Article 28.01, section 1), they are not for *only* those matters. There are two reasons. On its face, the statutory list is not exclusive, so the pretrial hearing is not limited to the eleven items on the list.[23] Even if it were exclusive, one item on the list is "(2) Pleadings of the defendant," which include "any other motions or pleadings permitted by law to be filed."[24] It was, therefore, proper for the appellee to file and the court to decide a motion to exclude, not suppress, evidence.[25] So the Court's conclusion that the pretrial motion must be a motion to suppress is invalid.

I confess that the Court's holding, that Article 44.01(a)(5) authorizes an interlocutory appeal of a decision to exclude evidence, is tempting. The five assistant district attorneys who are quoted in the opinion[26] made strong arguments why the State should be allowed to appeal pretrial rulings excluding evidence. But the statute that was enacted did not allow it, and

---

21. "The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted." TEX. CONST. art. II, § 1.

22. *See ante* at 900–02.

23. *See* DIX & DAWSON, *supra* note 6, at § 29.12.

24. "The pleadings and motions of the defendant shall be: ... (8) Any other motions or pleadings that are by law permitted to be filed." TEX. CODE CRIM. PROC. art. 27.02.

25. *See* DIX & DAWSON, *supra* note 6, at § 29.12.

26. *See ante* at 896–97, nn. 8 & 9.

it still does not. We have no authority to change the statute. I respectfully dissent.