

# NUMBER 13-17-00335-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

THE STATE OF TEXAS,                                                    Appellant,

v.

JUAN CARLOS LARA,                                                      Appellee.

On appeal from the 93rd District Court
of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Benavides**
**Memorandum Opinion by Justice Benavides**

By one issue, appellant, the State of Texas, appeals the trial court's granting of appellee Juan Carlos Lara's motion to suppress. The State argues Lara was properly given his statutory warnings and voluntarily waived his rights. We reverse and remand.

## I.    BACKGROUND

Lara was charged by indictment for the murder of Jaime Ramos. *See* TEX. PENAL

CODE ANN. § 19.02 (West, Westlaw through 2017 1st C.S.). Prior to trial, Lara filed a motion in limine regarding any statements he made to the Palmview Police Department. The motion requested that the trial court hold a hearing outside the presence of the jury to determine the admissibility of his statement.

Outside the presence of the jury, the trial court heard testimony from Investigator Suehay Alejandro and Detective Ezequiel Jurado of the Palmview Police Department. Detective Jurado arrested Lara and booked him in the Palmview City Jail. Investigator Alejandro took Lara's statement. Both testified Lara was given his statutory warnings. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22 (West, Westlaw through 2017 1st C.S.). After the testimony, the trial court granted Lara's motion to suppress and ruled the statement was inadmissible.

After the jury was unable to reach a verdict, Lara's trial ended in a mistrial. Jeopardy did not attach based on the circumstances of the mistrial, and the State appealed the trial court's ruling on the motion to suppress. *See id.* art. 44.01(a)(5) (West, Westlaw through 2017 1st C.S.); *see State v. Medrano*, 67 S.W.3d 892, 902 (Tex. Crim. App. 2002) (explaining how art. 44.01 gives the State the right to appeal in certain situations similar to federal prosectors); *but cf. State v. Blackshere*, 344 S.W.3d 400, 408–09 (Tex. Crim. App. 2011) (stating that when a trial court grants a mistrial and finds the State's evidence insufficient to convict the appellee, jeopardy attaches).

## II.  MOTION TO SUPPRESS

By its sole issue, the State argues the trial court improperly granted Lara's motion to suppress his statement.

**A.    Standard of Review**

We review a trial court's ruling on a motion to suppress under a bifurcated standard.  *Gonzalez v. State*, 501 S.W.3d 283, 285 (Tex. App.—Corpus Christi 2016, no pet.).   We give the trial court almost complete deference in its determination of historical facts, especially if they are based on an assessment of credibility and demeanor.  *Id*.  We afford the trial court the same deference on its rulings on the application of the law to questions of fact and to mixed questions of law and fact if resolution of those questions depends on an evaluation of credibility and demeanor.  *Id*.   However, for mixed questions of law and fact that do not fall within that category, a reviewing court conducts a *de novo* review.   *Id*.

Where a trial judge does not enter findings of fact, like in this case, a reviewing court must "view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record."   *Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007).

**B.    Relevant Background**

Prior to trial, Lara filed a motion in limine regarding his statement.   In his motion, Lara stated that the State should be prevented from making any references to his alleged statement because he believed that the statement was "involuntary and therefore inadmissible and respectfully requests a Limine Hearing be held and ruling be made before said evidence is admitted."

During trial, the trial court conducted the hearing requested outside the presence

of the jury. The State called Investigator Alejandro to testify. In her testimony, Investigator Alejandro explained that Lara was initially arrested at the Hidalgo Port of Entry by the United States Marshals and members of the Palmview Police Department. When she met with Lara later at the Palmview Police Department, she read Lara his *Miranda* rights in Spanish, Lara initialed each right, indicated he understood and waived his rights, and made a statement in Spanish. *See Miranda v. Arizona*, 384 U.S. 436 (1966).[1]

On cross-examination, Lara asked Investigator Alejandro if Court's Exhibits 1 and 2 were the only *Miranda* forms that were presented to Lara, to which she responded "yes." Lara presented Investigator Alejandro with Defense Limine Exhibit 4, which was another *Miranda* form from the Palmview Police Department. Defense Exhibit 4 was executed an hour and thirty-nine minutes prior to Investigator Alejandro's warnings. Defense Exhibit 4's warnings were given by Detective Jurado. Investigator Alejandro stated that she was not aware that Investigator Jurado had made contact previously with Lara. Investigator Alejandro then explained that if she had known that Detective Jurado had previously made contact with Lara, she "would have addressed the issue if he wanted to give a statement or not." Lara also questioned Investigator Alejandro about the rights contained on the *Miranda* warning page. *See id.* Lara asked the investigator to show him on the page where it stated, "I waive my rights." Investigator Alejandro agreed that

---

[1] Admitted as Court's Exhibit 1 was the Spanish translation of Lara's *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436 (1966). Court's Exhibit 2 was Lara's voluntary statement. At the top of the page was a second set of *Miranda* warnings, in which Lara initialed each right, stated he understood his rights, and waived his rights. *See id.* Court's Exhibits 3 and 4 were the certified English translations of Court's Exhibits 1 and 2.

while the paper did not specifically state that, it was inferred from the waiving of each right and willingness to give a statement on Lara's part.

The State asked Investigator Alejandro to point out where on the rights form it stated that Lara did not want to give a statement. Investigator Alejandro stated it did not say that he refused to give a statement anywhere on the form, and, in fact, the place to check off agree or not agree to speak to officers was left blank. Going through the rights again, Investigator Alejandro explained that Lara was read his rights multiple times and did not invoke his rights.

The Court then had the following exchange with Investigator Alejandro:

Trial Court: Well, I'm still confused, you know. If–if you had known that, what would you have done, if you had known that the other investigator had gotten this statement signed?

. . .

Trial Court: Let's say, if you had found out or if you knew that he had signed this statement, what would you have done?

Alejandro: Oh, I would have been advised by my superiors to stand off.

Trial Court: Okay. If you saw that statement the way it is?

Alejandro: The way it is, yes, I would have backed off.

Trial Court: And you wouldn't have taken–gone through all that process that you've gone through?

Alejandro: No, sir, we would've had to given him his rights.

In an attempt to clarify the responses, the State questioned Investigator Alejandro again:

State: Would you have taken a statement from the defendant if you had seen this document and it had a checkmark that he

5

agreed to waive his rights; would you still have gone forward?

Alejandro:    If he would've waived his rights, as far as wanting to speak to me, yes.

Detective Jurado also testified. He explained that he read Lara his *Miranda* warnings and had Lara sign the form that he had been given the rights. *See id.* The State asked Detective Jurado if he intended to take a statement from Lara after giving the rights, to which Detective Jurado responded no. He explained he had orally given Lara his rights upon initial contact at the bridge and there was no discussion between Detective Jurado and Lara during transport back to the Palmview Police Department. Detective Jurado stated that Lara gave no indication that he waived his rights or invoked his rights. Detective Jurado explained that he did not attempt to take a statement from Lara because he was a patrol officer and patrol officers did not question suspects of this nature. The middle of the warnings form where Lara would check if he wanted to waive his rights or not was left blank because Detective Jurado was not going to question him. On cross-examination, Detective Jurado explained that Lara's signature on the rights form indicated he understood his rights.

Following the testimony, the trial court explained:

> Well, my problem is that she had, if she was aware of it [the first warning form], she wouldn't have questioned him and that's what, you know, keeps, stays in my mind, at this point, and say, well, you know, she didn't know about it but if she'd known about it, she wouldn't have done what she did. And that's–I can't get around that.
>
> . . . .
>
> I've read the case law that you submitted this morning. I've read everything. As far as that's concerned, I kind of–this is kind of has been a very difficult, not difficult, but it's been kind of [sic], I think it's pretty simple

as far as what, you know, normally under normal circumstances, I do not have a problem with it.

However, based on the officer's testimony yesterday, I still can't get away from that. So I'm going to order that the statement be suppressed.

**C. Applicable Law**

Article 38.22 of the code of criminal procedure governs the admissibility of statements made by a defendant during custodial interrogation in a criminal proceeding. *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007) (citing TEX. CODE CRIM. PROC. ANN. art. 38.22). Article 38.22 requires that a defendant be provided with warnings virtually identical to those required by *Miranda*, but also that the accused has the right to terminate the interview at any time. *Id.* It further provides that an oral statement is admissible against a defendant in a criminal proceeding if, among other things, the defendant "knowingly, intelligently, and voluntarily" waived the rights set out in the warning. *Id.*

The State has the burden of showing a defendant knowingly, intelligently, and voluntarily waived his rights under *Miranda* and article 38.22 by a preponderance of the evidence. *Leza v. State*, 351 S.W.3d 344, 349, 351 (Tex. Crim. App. 2011); *see Joseph v. State*, 309 S.W.3d 20, 24 (Tex. Crim. App. 2010). In evaluating whether an individual waived his rights, courts look at (1) whether the waiver was made voluntarily, which is defined as being a product of a free and deliberate choice rather than intimidation, coercion, or deception and (2) whether the waiver was made with full awareness of both the nature of the rights being abandoned and the subsequent consequences of that decision. *Leza*, 351 S.W.3d at 349–50, 352. Such an evaluation involves the totality of

7

the circumstances, which requires the consideration of all the circumstances surrounding the interrogation, including the defendant's experience, background, and conduct. *Joseph*, 309 S.W.3d at 25.

A waiver can be expressly made or implied by the accused's conduct. *Berghuis v. Thompkins*, 560 U.S. 370, 384 (2010); *Joseph*, 309 S.W.3d at 24. "A valid waiver will not be presumed simply from the silence of the accused after the warnings are given or simply from the fact that a confession was in fact eventually obtained." *Joseph*, 309 S.W.3d at 24 (quoting *Miranda*, 384 U.S. at 475). A waiver need not assume a particular form and in some cases, a "waiver can be clearly inferred from the actions and words of the person interrogated." *Id.* (quoting *North Carolina v. Butler*, 441 U.S. 369, 373 (1979)). An implied waiver can be established upon a showing that the accused (1) was given proper warnings; (2) understood the warnings and their consequences; and (3) made an uncoerced statement. *Berghuis*, 560 U.S. at 382–85. "As a general proposition, the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford." *Id.* at 385. The *Berghuis* Court summarized its holding by stating, "in sum, a suspect who has received and understood the *Miranda* warnings, and has not invoked his *Miranda* rights, waives the right to remain silent by making an uncoerced statement to the police." *Id.* at 388–89.

### D.    Discussion

The trial court seemingly granted Lara's motion to suppress based on the unclear testimony given by Investigator Alejandro. However, in order to determine if Lara

8

invoked his rights prior to any interaction with Investigator Alejandro, we look at the totality of the circumstances. *See Joseph*, 309 S.W.3d at 25. We find that based on the testimony from both officers, Lara did not invoke his rights at any time.

Although Investigator Alejandro's testimony was unclear and contradictory, Detective Jurado's beliefs and actions explain the full situation. Detective Jurado testified that he was the officer who arrested Lara at the Hidalgo Port of Entry and took Lara to the Palmview City Jail. Detective Jurado also explained that he read *Miranda* warnings to Lara at his time of arrest in Spanish and no statements were made. Detective Jurado stated that he again read *Miranda* warnings in Spanish to Lara upon booking him into the city jail, but that he did not ask Lara if he waived or invoked those rights at that time because he was not going to ask any questions of him, other than the standard booking questions.[2] Detective Jurado testified that Lara also gave no indication of invoking or waiving his rights and since Detective Jurado was still a patrol officer at that time, he was not the person who would have taken a statement from Lara. Detective Jurado explained that after he warned Lara and filled out the proper booking forms, he assumed the information was forwarded to the investigations department and resumed his patrol duties.

Based on Detective Jurado's testimony, there was no indication that Lara had invoked or waived his rights when he was later approached by Investigator Alejandro. When Lara was with Investigator Alejandro, he was given his *Miranda* warnings a third time in Spanish, signed the form stating he understood the rights, waived his rights, and

---

[2] Routine booking questions are not considered interrogation. *See Pennsylvania v. Muniz*, 496 U.S. 582 (1990).

9

proceeded to give Investigator Alejandro a statement in Spanish.

Under the evaluation that courts take as stated in *Leza*, as well as waiver discussed in *Berghuis,* we find that Lara was properly warned of his statutory rights, having not previously invoked those rights, knowingly, intelligently, and voluntarily waived them,[3] and gave a voluntary statement to Investigator Alejandro. *See Leza*, 351 S.W.3d at 349–50, 352, *Berghuis*, 560 U.S. at 382–85; *see also Joseph*, 309 S.W.3d at 25. We sustain the State's sole issue.

### III.    CONCLUSION

We reverse the trial court's granting of the motion to suppress and remand for proceedings consistent with this decision.

GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
27th day of September, 2018.

---

[3] Lara also alleges the warnings given were not in substantial compliance with article 38.22. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22. However, the trial court had previously found compliance, but based on our decision and holding, we find this issue moot at this time.